MUSKEGON AGENCY, INC., *v.* GENERAL TELEPHONE
COMPANY OF MICHIGAN.

1. TELEGRAPHS AND TELEPHONES—ERROR IN ASSIGNMENT OF PRE-
VIOUSLY-ASSIGNED NUMBER—DAMAGES—AFFIRMATIVE DEFENSES.

Action by telephone customer for damages for defendant tele-
phone company's negligence in assigning a number previously
assigned to an unusually busy subscriber is based, in part at
least, on trespass on the case and sounds in tort and was one
in which telephone company could not assert affirmative de-
fenses (1) that it was not liable for errors in telephone
directories except where a specific charge is made for such
listing, (2) that a customer had no property right in tele-
phone numbers and (3) statement in telephone directory that
company assumed no liability for damages resulting from
error in the making up or printing of the directory (CL 1948,
§ 484.101 *et seq.;* Public Service Commission Order No T-
576).

2. SAME—PUBLIC SERVICE COMMISSIONS—ASSIGNMENT OF PREVIOUS-
LY-ASSIGNED NUMBER—STATUTES—REVIEW.

The reasonableness of the public service commission's rules lim-
iting a telephone company's liability for errors in telephone
directories is not passed upon, where defenses based upon
such rules were held not available in action for negligence
in assigning a number to a customer who needed a second
line in that a number was assigned which had previously been
assigned to an unusually busy customer, since to do so would
be in violation of the statutory provisions for review of the
commission's orders (CL 1948, § 484.101 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Telegraphs and Telephones § 95.
[2] 52 Am Jur, Telegraphs and Telephones § 48.
[3] 42 Am Jur, Public Administrative Law § 54.
[4] 52 Am Jur, Telegraphs and Telephones § 38.
[5] 43 Am Jur, Public Utilities and Services § 193.
[6] 52 Am Jur, Telegraphs and Telephones § 101.

3. Administrative Law—Hearing.

An administrative agency, vested with quasi-judicial and quasi-legislative powers, can act upon complaints properly filed and accord a hearing to all parties.

4. Public Service Commissions—Jurisdiction—Statutes—Telephone Companies.

The jurisdiction of the public service commission under statutory provisions relative to telephone companies is broad and comprehensive and, generally, prospective in operation (CL 1948, § 484.101 *et seq.*).

5. Same—Jurisdiction—Damages.

The public service commission is not a proper tribunal to decide a controversy after damage has been inflicted (CL 1948, § 484.101 *et seq.*).

6. Constitutional Law—Courts—Public Service Commissions—Damages.

Only a court, not the public service commission, can constitutionally award damages in a civil action for telephone company's breach of contract or for negligence (CL 1948, § 484.101 *et seq.*).

Appeal from Muskegon; Fox (Noel P.), J. Submitted June 15, 1954. (Docket No. 59, Calendar No. 46,035.) Decided September 8, 1954.

Case by Muskegon Agency, Inc., a Michigan corporation, against General Telephone Company of Michigan, a Michigan corporation, for damages arising from assignment of improper telephone number. In answer defendant included an affirmative defense based on regulations of public service commission. On motion of plaintiff, affirmative defense dismissed. Defendant appeals. Affirmed.

*Cyrus M. Poppen,* for plaintiff.

*Sessions & Barlow,* and *Donald J. Veldman (Power, Griffith & Jones,* of counsel), for defendant.

*Amici Curiæ:*

*Thomas G. Long, Jack H. Shuler* and *Albert J. Thorburn.*

Bushnell, J. Plaintiff Muskegon Agency, Inc., since 1940 has operated a general insurance agency in the city of Muskegon, writing all types of insurance, as well as surety, fiduciary and fidelity bonds. It and its predecessors have been engaged in this business since 1905.

Defendant General Telephone Company of Michigan, formerly the Michigan Associated Telephone Company, operates a public telephone service within the Muskegon area.

Some months prior to June 1, 1950, the agency found that its single telephone line with 2 extension phones, to which defendant had assigned number 2–2874, was inadequate for its needs and that additional service was required. To accomplish this, it was necessary, in order to furnish so-called "rotary service," that defendant install a second trunk line and other equipment with a new telephone number. The agency was informed that number 2–8281 would be assigned to the new service and published in the June, 1950, directory. Acting upon this information the plaintiff printed the new number on its letterheads, statements, and on the insurance policies which it usually issued to its customers. The new 1950 telephone directory was published and distributed, with the listing of plaintiff's new number both in the regular and classified sections. During the first few business hours of June 1st, plaintiff received many calls on its telephone under this new number, some of which were for the National Lumberman's Bank of Muskegon. Inquiry into the cause of the difficulty disclosed the fact that this same number 2–8281 was that of the bank.

The record does not disclose the date upon which this number was first assigned to the bank, but the inference seems clear that it had been in use for some time. When informed of the difficulty, the telephone company adjusted the mechanism in plaintiff's office

and in its exchange so that the dialing of 2–8281 would only ring the telephone in the bank, and thereafter incoming calls over plaintiff's telephone ceased.

Plaintiff, in order to minimize its loss and damages, requested the defendant to intercept all calls on number 2–8281 and transfer those for plaintiff to its telephone. This request was refused and immediately thereafter plaintiff's officers and agents, for the same purposes, made a personal visit to the bank, which resulted in the arrangement that the bank's switchboard operator would refer all of plaintiff's calls on number 2–8281 to plaintiff's old number 2–2874. Such assistance, however, proved to be inadequate, because it could only be rendered during banking hours from 9:30 a.m. to 3 p.m., with no service whatever on Saturday afternoons or Sundays. The agency then placed an advertisement in the local newspaper, advising the public that it could not be reached on number 2–8281, and that it would be necessary to dial number 2–2874. Other steps were taken to advise the agency's existing customers in order to lessen interference with its business relations.

Defendant denies that the new installation was ever made, but it does admit that when the installation of "rotary service" was attempted, it was then discovered that the use of number 2–8281 was impossible because that number was already in use by another, and that because of this situation the agency was thereafter furnished with 2 trunk lines, one of which was given plaintiff's old number 2–2874, and the other was carried as unlisted.

Plaintiff claims in its declaration filed February 26, 1952, that, because of the fact that more than 70% of its sales of insurance are made or received by telephone, it suffered great loss and damage during the period from June 1, 1950 to June 1, 1951, while the erroneous directory listing was in use. The

agency asserted that its former customers constantly complained of their inability to reach plaintiff by phone in order to renew their insurance, obtain service thereon, or purchase new insurance, and that as a consequence it suffered great loss in business by reason of defendant's failure to permit it to retain the use of number 2–8281, that was assigned to it.

From a compilation of the record of its business for the years 1948 to 1951, plaintiff insists that its loss in insurance premiums in new business alone was in excess of $18,000, on which it would have earned an average commission of 23.75 %, or in excess of $4,500. It is also pointed out that such losses, because of insurance practice, would result in a further loss of commissions over a period of 15 years, beginning June 1, 1950. Other damages were also asserted.

Plaintiff's declaration contains 4 counts. The first 2 are in assumpsit and based upon breach of contract; the other 2, sounding in tort, are in trespass on the case. One is based on ordinary negligence and the other on gross negligence.

In its answer defendant admits certain allegations of the declaration, but denies those pertaining to negligence and damages. As an affirmative defense, defendant relies on the benefit of the statutes pertaining to common carriers, the rules and regulations of the Michigan public service commission and its power and authority to make, alter, amend or abolish any rate or charge for any service, and to regulate by rules or orders any service or facility furnished or to be furnished by the defendant or its agents or servants. See generally in this connection the miscellaneous provisions relating to railroads (CL 1948, § 467.151 *et seq.* [Stat Ann § 22.1181 *et seq.*]) and telephone companies as common carriers (CL 1948, § 484.101 *et seq.* [Stat Ann § 22.1441 *et seq.*]).

Defendant alleged that the commission from time to time had issued rules and regulations binding upon it and other telephone companies operating in this State. Particular reliance is placed on order No T-576 of the commission pertaining to applications for service and facilities and nonliability of utilities for errors and omissions from directories, except where a specific charge is made for such listing. Reference is also made to an order entered November 7, 1949, which specifically provides that:

"The customer has no property right in telephone numbers or any right to the establishment or continuance of service through any particular central office, and the telephone numbers and the central office designation or both may be changed by the telephone company whenever exigencies of the business so require."

It also asserted nonliability because of the following language in the telephone directory issued on or about June 1, 1950:

"Directories are furnished to the customer by the telephone company as an aid to service and remain the property of the telephone company.

"The telephone company assumes no liability whatever for damages arising from errors or omissions in the making up or printing of this directory."

Defendant claims that the written application by plaintiff to the company on June 1, 1947, which is still effective, provides that as to errors:

"The telephone company's liability shall be limited to a pro rata abatement of the total amount payable hereunder to the extent that an error or omission affects the entire advertisement or listing."

The concluding paragraph of defendant's affirmative defense states:

"That prior to June 1, 1950, the plaintiff was furnished with 2 service trunk lines instead of 1 trunk line which it had previously had and when the error in telephone numbers was discovered just prior to the connecting up of plaintiff's new service, its old telephone number 2–2874 was immediately assigned to and connected up with one of said trunk lines so that plaintiff would be inconvenienced as little as possible through the error occurring in said directory. That as a further aid to plaintiff's service the second trunk line was not given a listed number, thus enabling plaintiff to use the second trunk line for outgoing calls exclusively and leaving the first trunk line open for incoming calls exclusively."

On April 9, 1952, plaintiff moved to dismiss that portion of defendant's answer, entitled: "Affirmative Defense," for the reason that "the allegations therein contained do not constitute a defense, in whole or in part, to any of the causes of action set forth in the plaintiff's declaration."

The trial judge on January 19, 1953, filed an opinion which covers 26 pages in the record, in which he patiently and carefully considered the claims of the parties as reflected in the pleadings. From this we quote the concluding paragraphs:

"In this case, we have an agreement based upon a valid consideration of mutual promises. The plaintiff relied upon his mutual agreement, to its detriment. There was a breach of the agreement and of duty by the defendant.

"On the allegations of the declaration and the facts admitted by the pleadings, the plaintiff is not confined to a recovery for breach of contract: it is also entitled to sue in tort and, in case of recovery, have its damages measured as in that character of action. The defendant is a public service corporation operating under a public franchise. The law necessarily imposes an obligation of diligence upon such favored corporations. If the proofs sustain the

allegation, the plaintiff should be entitled to a fair compensation for the loss it has sustained, the inconvenience and annoyance of being wrongfully deprived of the service for which it had stipulated. *Carmichael* v. *Southern Bell Tel. & Tel. Company,* 157 NC 21 (72 SE 619, Ann Cas 1913B, 1117, 39 LRA NS 651); *Cumberland Tel. & Tel. Co.* v. *Hobart,* 89 Miss 252 (42 So 349, 119 Am St Rep 702); *Virginia-Carolina Peanut Company* v. *Atlantic Coast Line R. Co.,* 155 NC 148 (71 SE 71).

"From the pleadings, it appears that there is a dispute of facts as to whether or not plaintiff's telephone was actually connected to number 2–8281 and the rotary system on the 1st day of June, 1950. Plaintiff claims that it was, and defendant claims that it was not so connected. At the present status of the case, it cannot be determined if this dispute is important to final disposition.

"For the reasons stated upon the record now before the court, there is no 'error or omission' in the make-up of the 1950 directory insofar as it concerns this case. The defendant's affirmative defense must, therefore, fail, and the plaintiff's motion is granted."

On defendant's motion for a rehearing, the court filed a second opinion on August 13, 1953, with this conclusion:

"The change in the number and the kind of service extended to the plaintiff by the defendant after June 1, 1950, was not occasioned by the 'exigencies of the business,' but rather, by the negligence of the defendant's agents. Therefore, again assuming the reasonableness of the rule, the rule would be inapplicable to the instant case.

"Reasonable application of the rule does not give the company an unqualified right to change or cancel telephone numbers at any time. The rule gives the company the privilege of changing numbers 'whenever exigencies of the business so require.' It would be an unreasonable interpretation and application of the rule to hold that the company could

change numbers without liability for damages whenever the company is guilty of negligence, either gross or ordinary. Such an interpretation and application would open the door to great abuse. A rule of this kind ought to be strictly construed.

"Since all of the matters relied upon by defendant in its petition for a rehearing of plaintiff's motion to dismiss the defendant's affirmative defense have already been passed upon by this court in its original opinion, defendant's motion for a rehearing is, therefore, hereby denied."

Upon leave granted, defendant has appealed from the order dismissing the affirmative defense.

In the comprehensive briefs of the parties and *amici curiae,* 9 questions are presented, the last of which contains 5 subsections. The decisive question, however, is whether the trial court was correct in striking defendant's affirmative defense. It is unnecessary to discuss specifically and at length other questions pertaining to the jurisdiction of the trial court and the contention that the commission has exclusive jurisdiction as well as those regarding the applicability of the rules of the commission.

We nevertheless note that on the jurisdictional question defendant contends that it is a common carrier pursuant to PA 1913, No 206 (CL 1948, § 484.101 *et seq.* [Stat Ann § 22.1441 *et seq.*]) and, therefore, is subject to the public utilities commission act PA 1919, No 419 (CL 1948, § 460.51 *et seq.* [Stat Ann § 22.1 *et seq.*]), as superseded by PA 1939, No 3, as amended by PA 1951, No 275, creating the public service commission. (CL 1948 and CLS 1952, § 460.1 *et seq.* [Stat Ann 1953 Cum Supp § 22.13 (1) *et seq.*]).

This is not a case of where the defendant is acting under the authority of the statutes and the rules of the commission which permit a change of a subscriber's telephone number; nor is it one involving

errors or omissions in listings. It is rather one where damages are claimed because of defendant's negligence in assigning to plaintiff the same number that had already been assigned to and was in use by an unusually busy subscriber, the National Lumberman's Bank; and where, on the face of the pleadings, damage had resulted.

It is therefore, in part at least, an action based on trespass on the case and sounding in tort. See *Stout* v. *Keyes*, 2 Doug (Mich) 184, and *Barry* v. *Peterson*, 48 Mich 263.

The situation presented here is analogous to that in *Harbaugh* v. *Citizens Telephone Co.*, 190 Mich 421 (Ann Cas 1918E, 117), where it was charged that the defendant telephone company—

" 'wrongfully, maliciously, unjustly, carelessly, and negligently refused to connect said plaintiff's telephone with said defendant's exchange in the city of Grand Rapids, Mich., from Friday, February 5, 1915, up to Friday, February 12, 1915,' at which time service was restored. Plaintiff avers that by reason of said unlawful act of the defendant he 'suffered great inconvenience, annoyance, humiliation, and loss of business, and was totally unable to send or receive telephone messages from February 5, 1915, to February 12, 1915, and was utterly unable to transact his usual business' to his damage, $5,000."

After stating the facts, Justice BROOKE, speaking for a unanimous Court, pointed out:

"It is plaintiff's claim that the action, though based upon a breach of the contract, nevertheless is one sounding in tort. It is pointed out that the duty of the defendant to furnish telephone service to the plaintiff is fixed by statute (PA 1913, No 206 [CL 1915, § 6691]), and that the contract between the parties simply measures the terms upon which such service is to be rendered."

In the *Harbaugh Case* the Court said (p 428):

"A review of all the cases upon the subject leads us to the conclusion that in the absence of evidence that the defendant acted recklessly, negligently, or maliciously in interrupting the service, the plaintiff cannot recover punitive damages. His actual damages may, however, include a just compensation for such annoyance and inconvenience as he may be able to show he suffered by reason of defendant's unlawful act."

See, also, authorities annotated in 23 ALR, beginning at page 952, and *William H. Schwanke, Inc.,* v. *Wisconsin Telephone Co.,* 199 Wis 552 (227 NW 30, 68 ALR 1320, and the annotation which follows).

The trial judge was correct in holding that the defendant in an action sounding in tort was not entitled to assert the "affirmative defense."

In basing our decision on the above, we expressly decline to pass upon the "reasonableness" of the commission's rules limiting liability as raised by the defendant. To do so in the instant case would be in violation of the statutory provisions for review of the commission's orders.

It is axiomatic that an administrative agency, vested with quasi-judicial as well as quasi-legislative powers, can act upon complaints properly filed and accord a hearing to all parties.

The jurisdiction of the public service commission under the statutory provisions is broad and comprehensive. Yet that jurisdiction has generally been prospective in operation. However, it is not a proper tribunal to decide a controversy after damage has been inflicted. This is a civil action to recover damages for breach of contract or for negligence. The commission has no jurisdiction to award plaintiff damages or to reimburse plaintiff for its losses. Only a court, in accordance with due process, can constitutionally award damages in a civil action.

The order dismissing the "affirmative defense" is therefore affirmed. The cause is remanded for further proceedings not inconsistent with this opinion. Costs to plaintiff.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.