Bentley Kassal, J.
This action was begun in April, 1971 in the Small Claims Court by the plaintiff pro se to recover the *795 sum of $300 from the New York Telephone Company for damages resulting from its failure to provide plaintiff with proper service. The claim is essentially for the value of 61% hours of plaintiff’s time spent waiting — waiting, for instance, to obtain a dial tone, to complete a call or to obtain assistance from company personnel — which plaintiff logged over an eight-month period beginning January 1,1970. There is no claim of damage to business or for interruption of service (telephone out of order).
The list of plaintiff’s many complaints was set forth in detail in the interim decision of this court dated June 18, 1971 (67 Mise 2d 348). That opinion also set forth the procedure and legal standard which is applicable to this lawsuit. Defendant may be liable only if the court finds, once the defendant comes forward with evidence, that the plaintiff has proved gross negligence on the part of defendant. Although, as plaintiff contends, the telephone company has the obligation to furnish services that are “just and reasonable” and “adequate, efficient and proper” (Public Service Law, §§ 91, 97, subd. 2), no liability shall attach to defendant for damages arising from such delays and errors, in the absence of gross negligence or willful misconduct. This limitation, contained not in the statutes hut in the company’s rules and regulations filed with the Public Service Commission (PSC No. 800), must he read in conjunction with section 93 of the Public Service Law, which gives a right of action for any violation of this law.
The trial of this action was adjourned until September to a trial part principally for the purpose of hearing additional evidence on the question of gross negligence. At this time plaintiff was first represented by counsel. Since December the trial has continued at an uneven pace, scheduled around the court’s regular calendar. After 13 additional days on trial, testimony was completed in April, 1972, and post-trial memoranda were submitted at the end of May presenting the parties’ legal and factual contentions.
Plaintiff sought to place in issue the service of the entire telephone network as it has evolved over the years, but, for the purposes of trial, proof was limited to plaintiff’s telephone exchange (as part of a small number of exchanges grouped together as an “ entity”) as the smallest unit using common equipment and it was limited to the time period in issue plus the two preceding years.
By exhibits and expert testimony, a morass of technical data was presented to the court, most of which went to the condition *796 and operation of the telephone equipment in the East 56th Street central office, which furnishes plaintiff’s telephone service. The specific items were (1) the main distributing frame, (2) senders, and (3) trunks. There was no testimony as to any failure of plaintiff’s own telephone or wiring.
It was originally my intention to sift through the pages of evidence and to summarize the condition of this equipment in writing before drawing any conclusions. I now find such detail unnecessary. There is little doubt in my mind that the wiring and trunks were not functioning properly. The main distributing frame over two years became so overloaded as to be a “ wall of wires ” and, contrary to acceptable internal standards of the company, it had “banjo stringing” (wires too tight), “draping” (wires too loose), spliced wires, “disconnects” in bunches (old and unused wires not pulled), wires on the floor and ‘ ‘ splashing ’ ’ (solder splashed on wires while being applied without an apron, because of the lack of work space). (Photograph dated July 22, 1970; Dial Central Office Index, Number 5 Cross-Bar Service Results Plan; testimony of witness Griffiths.)
(The photograph, belonging to defendant, which was introduced into evidence by plaintiff vividly illustrated the hopeless maze of wires and connections on the main distributing frame, as described by plaintiff’s witnesses.)
Moreover, during 1969 and 1970, the performance of the senders was below the company’s minimum standards, and the number of hours of “ equipment and trunk outage ” was given the lowest possible rating in January, 1970, on one index used by the company to measure performance of such items. While not the exclusive cause of plaintiff’s complaints (and indeed irrelevant to some of them), these conditions in the central office were shown to be at least in part responsible for a deterioration in service.
There was clearly a lack of foresight, constituting negligence, on the part of the telephone company in failing to plan for results of the 1 ‘ tremendous ’ ’ office and residential construction which took place in the geographical area served by this office (essentially the East Side of Manhattan from 46th St. to 66th St.) — since presumably such buildings did not spring up overnight. And the overloading was compounded by a sales campaign carried on by telephone installers and repairmen to induce subscribers to purchase more equipment (allegedly halted in 1969, hut nevertheless the subject of a cease and desist order to that effect from the Public Service Commission dated February 2, 1970).
*797 On the other hand, to meet the heavy demand for telephone service, after existing equipment showed the stress of excessive installations, additional equipment was put into service, the number of employees on the main frame was increased fourfold, and special tools were devised to work on overcrowded wiring (one of which was referred to as the “magic wand”). In February of 1969 defendant began planning to increase the capacity of the frame. An additional distributing frame was put in use on the eighth floor in the latter part of February, 1970, about standard time for planning and achieving installation. Another frame was put on the third floor, specially fitted for the low ceiling. The employees called it the “ hooleygooley ”. During this construction period, some of the trunk outage hours were due to the moving and changeover of equipment. Defendant also showed that well over 99% of outgoing calls did go through the senders, even during this period.
In sum, it is clear that plaintiff did prove that he was greatly inconvenienced by poor service during the period of January through August, 1970 and that the frames and other general equipment in the East 56th Street central office furnishing his telephone service were not operating and could not be made to operate at their intended level of performance. In fact, they did not even meet the telephone company’s own standards of efficiency. Some of the items of plaintiff’s complaint were clearly unconnected to the state of the equipment, such as the inefficiencies of information and repair operators, and others, like cross talk, could have various causes.
Gross, or culpable negligence, implies very great negligence and the want of even scant care. It has been defined as “ disregard of the consequences which may ensue from the act, and indifference to the rights of others.” (People v. Angelo, 246 N. Y. 451, 457; Carlson Constr. Co. v. New York Tel. Co., 45 Misc 2d 229, 233 [Sup. Ct., Suffolk County, 1964]).
While the record herein may indicate some negligence and unsatisfactory conditions, I cannot say that the telephone company has totally disregarded the situation or failed to take remedial steps to alleviate those problems, even if it be late in so acting.
Plaintiff has failed to prove a cause of action sufficient at law in that there was no proof of any willful misconduct or gross negligence on the part of defendant as against the plaintiff, as a particular subscriber. If the complaints are related solely to the general deterioration of service, the primary jurisdiction *798 lies with the Public Service Commission (Meyerson v. New York Tel. Co., 65 Misc 2d 693 [Kings County, Sup. Ct., 1971]).
To assert as plaintiff does, that the functioning of company equipment was not “adequate, efficient, proper and sufficient ” does not give him a compensable cause of action, as contrasted to a complaint of gross negligence with respect to his service in particular. (Driscoll v. New York Tel. Co., 70 Misc 2d 377, and cf. cases cited therein; Public Service Law, § 94, subd. 2; § 96, subd. 1; Public Service Commission Case No. 25290.) Although the Public Service Commission has no power to award monetary damages for poor service, this does not mean that a court may grant this relief. The fact that a party has no administrative remedy does not entitle him to judicial relief unless he proves a cause of action. Although the courts may not pass upon the adequacy of service generally, they do have original jurisdiction to remedy a case of gross negligence or willful misconduct, as applied to the individual subscriber.
In view of the finding that plaintiff did not sustain his burden of proof, we are not called upon to decide the other defenses raised by defendant.
Judgment shall be entered for defendant dismissing the complaint herein.