VALENTINE v MICHIGAN BELL TELEPHONE COMPANY

1. PUBLIC SERVICE COMMISSIONS—JURISDICTION—RATES—ADMINISTRA-
   TIVE LAW—UTILITIES.

   The Michigan Public Service Commission is primarily a regula-
   tory and administrative body which is "vested with power and
   jurisdiction to regulate all rates, fares, fees, charges, services,
   rules, conditions of service and all other matters pertaining to
   the formation, operation or direction of" certain public utilities
   (MCLA 460.6).

2. PUBLIC SERVICE COMMISSIONS—CORPORATIONS—MONOPOLIES—RATES
   —TARIFFS—REGULATIONS.

   The theory behind the powers of a regulatory body, such as the
   Michigan Public Service Commission, to fix rates, charges and
   conditions of service is that, in dealing with monopolistic
   corporations that serve great numbers of customers, some
   public agency must have the power to fix the rates, charges,
   etc., fairly to both the utility and the customers; the validity
   and effect of tariffs and regulations so promulgated has been
   recognized and upheld.

3. PUBLIC SERVICE COMMISSIONS—RATES—RETROACTIVITY—TARIFFS—
   REGULATIONS.

   The power of the Michigan Public Service Commission over rates,
   etc., is not retroactive; its tariffs and regulations become effec-
   tive when adopted by it.

4. COURTS—PUBLIC SERVICE COMMISSIONS—UTILITIES—TARIFFS—REGU-
   LATIONS.

   A court of general jurisdiction is the proper forum, if a plaintiff's
   cause of action is based upon a claim that a utility has violated
   Michigan Public Service Commission promulgated tariffs or
   codes, or if the claim covers some action by a utility outside the
   regulation of the Michigan Public Service Commission.

5. PUBLIC SERVICE COMMISSIONS—TARIFFS—CONTRACTS—APPEAL AND
   ERROR.

   A party aggrieved by the provisions of a tariff or code promul-

REFERENCE FOR POINTS IN HEADNOTES
[1-9] 43 Am Jur, Public Utilities and Services § 192 *et seq.*

gated by the Michigan Public Service Commission should seek relief by an attack upon those provisions before the Public Service Commission and from it to the Ingham County Circuit Court because the code or tariff is part of the contract between the parties and limits of liability therein contained are presumptively valid and any claim based upon the contractual obligation of the parties is limited to the provisions of the tariff or code.

6. TORTS—COURTS—UTILITIES.

The proper forum for a claim against a utility sounding in tort is a court of general jurisdiction of this state.

7. DISMISSAL AND NONSUIT—TELECOMMUNICATIONS—PLEADING—NEGLIGENCE — FRAUD— MISREPRESENTATION — TORTS — CONTRACTS — PUBLIC SERVICE COMMISSIONS—TARIFFS.

Trial court, in its judgment of dismissal, correctly held that "neither the Complaint nor any amendment thereto filed herein set forth a cause of action cognizable by this Court" where no count of the complaint set forth acts or conduct of defendant telephone company that would constitute negligence, gross negligence, fraud, misrepresentation, or some other tort and, as for any claim in contract, no violation of a code or tariff promulgated by the Michigan Public Service Commission was pleaded.

8. PLEADING—ALLEGATIONS OF CONCLUSIONS—DISMISSAL AND NONSUIT.

Allegations of mere conclusions are not sufficient to save a pleading from dismissal on proper motion.

9. PUBLIC SERVICE COMMISSIONS—JURISDICTION—REGULATIONS—RATES —TARIFFS—COURTS—DAMAGES—TORTS.

The jurisdiction of the Michigan Public Service Commission is primarily prospective—a matter of promulgating regulations and setting rates and its tariffs and regulations, if applicable, control as to the rights of the parties; a claim that sets forth facts showing a plaintiff suffered damage as a result of a violation of the tariffs and regulations or a claim in tort that sets forth facts which would constitute tortious conduct to the injury and damage of the claimant can be filed in a court of general jurisdiction.

Appeal from Court of Appeals, Division 2, Quinn, P. J., and Bronson and O'Hara, JJ., affirming Oakland, William John Beer, J. Submitted

March 8, 1972. (No. 6 March Term 1972, Docket No. 53,298.) Decided July 26, 1972.

31 Mich App 18 affirmed.

Complaint by Stephen K. Valentine, Jr., and Frances M. Valentine against Michigan Bell Telephone Company for damages for breach of contract, gross negligence, fraud and misrepresentation, malicious and fraudulent failure to provide reasonably adequate equipment and facilities and service, willful and wanton negligence, and for a finding that the Michigan Public Service Commission's regulations concerning limitations of liability are null and void as against public policy. Judgment for defendant. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Affirmed.

*Stephen K. Valentine, Jr., P. C.,* for plaintiffs.

*Mary M. Conrad* and *Hartman, Beier, Howlett, McConnell & Googasian,* for defendant.

ADAMS, J.

I.

Plaintiff Valentine, on his own behalf and for his wife, filed suit in Oakland County Circuit Court. He asked that Michigan Bell be ordered to provide adequate telephone service, damages for losses incurred as a result of inadequate service, punitive and exemplary damages in the amount of $790,000, and a finding that the Public Service Commission's regulations concerning limitations of liability be declared null and void as against public policy. The claim, as amended, charged breach of contract, gross negligence, fraud and misrepre-

sentation, malicious and fraudulent failure to provide reasonably adequate equipment and facilities and service, and willful and wanton negligence.

Michigan Bell moved for accelerated and summary judgment based on three grounds: 1) by the doctrine of primary jurisdiction, the Public Service Commission had to hear the case first; 2) there was a similar action by Valentine pending before the Public Service Commission; and 3) there was a failure to state a claim upon which relief could be granted.

The trial court granted summary judgment. The Court of Appeals affirmed. (31 Mich App 18.) In an opinion written by Judge QUINN, that Court found that, regardless of the variety of names Valentine gave to his claim, he was basically complaining of inadequate service and equipment over which the Public Service Commission had primary jurisdiction. Dismissal was therefore proper. Any appeal from the order of the Commission would be to the Ingham County Circuit Court in accordance with MCLA 484.114; MSA 22.1454. The Court of Appeals declined to follow *Grevers v Michigan Bell Telephone Co,* 18 Mich App 422 (1969), noting that the issue of lack of jurisdiction of the Wayne County Circuit Court was not raised in *Grevers.*

## II. *Jurisdiction*

The first question in this case is the extent of the jurisdiction of the Oakland County Circuit Court in a suit by a customer against a utility based upon claimed inadequate or improper service or, stated the other way around, the extent of the jurisdiction of the Public Service Commission with regard to such a claim. Plaintiffs maintain that any claim for damages suffered by them is within the jurisdiction of the Oakland County

Circuit Court. Defendant, on the other hand, agrees with the holding of the Court of Appeals that the Public Service Commission has primary jurisdiction as to all matters covered by the code and tariff. If plaintiffs have suffered damages due to inadequate service, defendant maintains their remedy is through the Commission and from it to the Ingham County Circuit Court.

This Court has recognized that certain claims against a telephone company may be brought in courts of general jurisdiction of this state. In *Harbaugh v Citizens Telephone Co,* 190 Mich 421 (1916), a declaration in trespass on the case against a telephone company for wrongful refusal to connect plaintiff's telephone with a city exchange, charging a loss of business, was held to state a cause of action for which damages could be recovered. While defendant would distinguish that case from this one because no tariff was involved in *Harbaugh* and because the declaration sounded in tort, the case does recognize that in some situations a court of general jurisdiction is the proper forum in which to sue.

A telephone customer's right of action for damages suffered due to the negligence of a telephone company in assigning a number was analyzed by this Court in *Muskegon Agency, Inc v General Telephone Co of Michigan,* 340 Mich 472 (1954). This Court quoted with approval the following from the opinion of the trial court (pp 478–479):

" 'In this case, we have an agreement based upon a valid consideration of mutual promises. The plaintiff relied upon his mutual agreement, to its detriment. There was a breach of the agreement and of duty by the defendant.

" 'On the allegations of the declaration and the facts admitted by the pleadings, the plaintiff is not confined

to a recovery for breach of contract: it is also entitled to sue in tort and, in case of recovery, have its damages measured as in that character of action. The defendant is a public service corporation operating under a public franchise. The law necessarily imposes an obligation of diligence upon such favored corporations. If the proofs sustain the allegation, the plaintiff should be entitled to a fair compensation for the loss it has sustained, *the inconvenience and annoyance of being wrongfully deprived of the service for which it had stipulated. * * * ' " (Emphasis added.)*

In *Muskegon Agency, Inc v General Telephone Co of Michigan,* 350 Mich 41 (1957), the above holding was reaffirmed. Defendant would distinguish the *Muskegon* case because the deficiency in service was not dealt with in the telephone company's tariff. Defendant concedes, however, that some claims against it can be adjudicated by a court of general jurisdiction and, in its brief, gives, as an example, a claim for personal injuries arising out of the negligent operation of one of defendant's trucks. Defendant maintains: "If the activity is regulated, if it is controlled by statute and regulations of the Commission, the Commission has exclusive jurisdiction and the Oakland County Circuit Court has none."

The Public Service Commission is primarily a regulatory and administrative body. "It is * * * vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation or direction of such public utilities." MCLA 460.6; MSA 22.13(6).

The theory behind the powers of a regulatory body, such as the Public Service Commission, to fix rates, charges and conditions of service is that, in dealing with monopolistic corporations that serve great numbers of customers, some public agency

must have the power to fix the rates, charges, *etc.,* fairly to both the utility and the customers. The validity and effect of tariffs and regulations so promulgated has been recognized and upheld.[1] The power of the Public Service Commission over rates, *etc.,* is not retroactive. *Michigan Bell Telephone Co v Public Service Commission,* 315 Mich 533 (1946); *Muskegon Agency, Inc v General Telephone Co of Michigan, supra.* Its tariffs and regulations become effective when adopted by it. *Fletcher Paper Co v Detroit & M R Co,* 198 Mich 469 (1917).

There are some situations involving rates in which a customer may sue a utility in a court of general jurisdiction. In the *Fletcher* case, it was held that the Circuit Court of Bay County was the proper forum for the recovery of rates wrongfully charged by a railroad company in contravention of the rates which had been set by the Michigan Railroad Commission. In that case, an action in assumpsit was based on the validity of rates set by the Commission and the invalidity of the overcharge. Plaintiff did not seek to upset the rates established by the Commission but rather to recover from the railroad for charges wrongfully imposed by it in violation of Commission-set rates.

If a plaintiff's cause of action is based upon a claim that the utility has violated Public Service Commission promulgated tariffs or codes, or if the claim covers some action by the utility outside of the regulations of the Public Service Commission,

[1] *Correll v The Ohio Bell Telephone Co,* 63 Ohio App 491; 27 NE2d 173 (1939); *Wilkinson v New England Telephone & Telegraph Co,* 327 Mass 132; 97 NE2d 413 (1951); *Cole v Pacific Telephone & Telegraph Co,* 112 Cal App 2d 416; 246 P2d 686 (1952); *Wade v Southwestern Bell Telephone Co,* 352 SW2d 460 (Tex, 1961); *Sarelas v Illinois Bell Telephone Co,* 42 Ill App 2d 372; 192 NE2d 451 (1963); *Indiana Bell Telephone Co, Inc v Ice Service, Inc,* 142 Ind App 23; 231 NE2d 820 (1967); *Warner v Southwestern Bell Telephone Co,* 428 SW2d 596 (Mo, 1968); and 92 ALR2d 913, Section III, p 935.

a court of general jurisdiction is the proper forum. On the other hand, the code or tariff is part of the contract between the parties and limits of liability therein contained are presumptively valid. Any claim based upon the contractual obligation of the parties is limited to validly promulgated provisions of the tariff or code within the authority of the Public Service Commission. Ordinarily, a party aggrieved by the provisions of a tariff or code should seek relief by an attack upon those provisions before the Public Service Commission and from it to the Ingham County Circuit Court. While the contractual obligations of the parties may be determined by the rules, tariffs and regulations of the Public Service Commission, such is not the case with regard to tortious conduct. *Harbaugh, supra,* and *Muskegon Agency* cases, *supra,* have clearly established that the proper forum for a claim sounding in tort is a court of general jurisdiction of this state.

### III. *Plaintiffs' Claims*

Count I of plaintiffs' first complaint is based on the claim that "service has not been efficiently and consistently provided". It further claims that because the service has been out of order, Stephen K. Valentine "has lost clients and aggravated other clients and potential clients by reason of the clients inability to communicate with the plaintiff, * * * ," and Frances M. Valentine "has been called on numerous occasions to be given teaching assignments, but because of the malfunctioning telephone equipment * * * has lost teaching assignments * * * ."

Count II claims that the failure to provide "efficient and consistent telephone service" constituted

gross negligence and that the actions of defendant have damaged the reputation of Stephen K. Valentine as an attorney and that of Frances M. Valentine as a teacher.

By a first amended complaint, a third count was added which stated "the defendant * * * has adopted an operating policy * * * which is misleading and fraudulent and constitutes fraud and misrepresentations to the subscribers and users of their services * * * ." Some of the misrepresentations were the giving of busy signals when the telephone was actually out of order and giving incorrect measurement of time on long distance calls.

Plaintiffs' second amended complaint contains five counts, the first three, plus two more.

Count IV alleges:

"That the defendant maliciously, fraudulently and by way of misrepresentation assured and presently assures plaintiffs and others that it uses reasonably adequate and up-to-date equipment and that it is doing all it can to supply proper service; defendant makes these representations knowing that they are false * * * .

"That the defendant, by design uses obsolete and outdated equipment, and that it materially represents this equipment to be up-to-date and adequate when in fact, defendant is fully aware that such is not the case; or that defendant made or continues to make such representations recklessly, without any knowledge of its truth and as a positive assertion.

"That plaintiffs have relied, to their detriment, on such representations and as a result they have been severely damaged and injured, * * * in their inability to rely on reasonably adequate telephone service * * * , and plaintiffs are further damaged and injured when callers attempt to reach plaintiffs and are misled into a belief by virtue of defendant's use of busy signals, ringing tones, etc., that plaintiffs are unavailable when such is not the case."

Count V alleges:

"That the acts of the defendant * * * are the result of defendant's willful and wanton negligence and in certain instances the fraud and misrepresentation of defendant * * * and that the shield claimed by the defendant of limited liability by virtue of the Michigan Public Service Commission tariffs and regulations is so unconscionable as to be unenforceable."

The provisions of 1954 AC, R 460.1960, p 6457, and Michigan Bell Telephone Company Tariff MPSC No 7, Original Sheet No 6, both in effect in 1969, in pertinent part provide:

*R 460.1960:*

"10.2. The liability of the telephone utility for damages arising out of mistakes, omissions, interruptions, delays, errors, or defects in transmission, occurring in the course of furnishing service or facilities and not caused by the negligence of the customer, shall in no event exceed an amount proportionate to the charge to the customer for the period of service during which such mistake, omission, interruption, delay, defect, or error in transmission occurs.

\*    \*    \*

"10.5. In the adjustment of charges because of an error in billing, refunds and charges will be made in the full amount when they can be determined; when the exact amount cannot be determined from the records, the maximum refund or charge will not exceed an estimated amount equal to such charge for a 3-year period."

*Tariff MPSC No 7, Original Sheet No 6:*

"GENERAL REGULATIONS
GENERAL

"A. UNDERTAKING OF THE TELEPHONE COMPANY.
"1. The Telephone Company does not undertake to

transmit messages but offers the use of its facilities for the transmission of communications.

"2. The calling party and the called party are required to establish their identities to each other as may be necessary in the course of the communication and the responsibility for so doing rests with those parties.

"B. USE OF SERVICE AND FACILITIES.

"1. The service and facilities furnished are intended only for communications in which the customer or user authorized by the Telephone Company has a direct interest and shall not be used for any purpose for which a payment or other compensation shall be received by them or either of them from any other person, firm or corporation for such use, or in the collection, transmission or delivery of any communication for others—except that these provisions do not apply to the handling of messages accepted for transmission by customers who are engaged in a public telegraph business nor to such other cases as are specifically referred to in the Telephone Company's Tariffs, nor where such use is casual.

\* \* \*

"C. LIABILITY OF THE TELEPHONE COMPANY.

"1. In the event of an interruption to the service which is not due to the negligence or willful act of the customer, upon notice and application by the customer an allowance will be made for the time the interruption continues.

"2. The liability of the Telephone Company for damages arising out of mistakes, omissions, interruptions, delays, or errors or defects in transmission occurring in the course of furnishing service or facilities and not caused by the negligence of the customer, shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, or error or defect in transmission occurs.

\* \* \*

"5. The Telephone Company is not liable for any \* \* \* damage to the premises of a customer (or authorized user) resulting from the attachment of the Telephone Company's instruments, apparatus and associated wiring on such premises or from the installation or removal thereof."

The detailed quoted portions of the various counts have been set out to delineate the full extent of the pleaded facts. No count sets forth *acts or conduct of defendant* that would constitute negligence, gross negligence, fraud, misrepresentation, or some other tort. As for any claim in contract, no violation of the code or tariff is pleaded.

The trial court, in its judgment of dismissal, correctly held that "neither the Complaint nor any amendment thereto filed herein set forth a cause of action cognizable by this Court." As was stated in *Plassey v S. Loewenstein & Son,* 330 Mich 525, 528 (1951): "But allegations of mere conclusions are not sufficient to save a pleading from dismissal on proper motion." During the argument on the motion for summary judgment, the court stated, "I do not have the jurisdiction." Part of the confusion in this case has arisen because of this statement of the trial judge and the statement by the Court of Appeals "that primary jurisdiction over issues of inadequate service and equipment lies with MPSC." The jurisdiction of the Public Service Commission is primarily prospective—a matter of promulgating regulations and setting rates. Its tariffs and regulations, if applicable, control as to the rights of the parties. The courts are primarily concerned with affording remedies for actions that have taken place. A claim that sets forth facts showing a plaintiff suffered damage as a result of a violation of the tariffs and regulations can be entertained by a court of general jurisdiction, or a claim in tort that sets forth facts which would constitute tortious conduct to the injury and damage of the claimant can also be filed in a court of general jurisdiction.

The trial court and the Court of Appeals are

affirmed. Plaintiffs failed to state a cause of action. Costs to defendant-appellee.

T. M. KAVANAGH, C. J., and BLACK, T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.