HUNTER v GENERAL TELEPHONE COMPANY

Docket No. 59633. Submitted June 10, 1982, at Grand Rapids.—Decided November 17, 1982. Leave to appeal applied for.

Frank Hunter, doing business as Hunter Funeral Home, brought an action in Alpena Circuit Court against the General Telephone Company and Michigan Bell Telephone Company for losses in profits resulting from alleged inadequacies in directory assistance services rendered to plaintiff's potential customers by the telephone companies' agents. Hunter Funeral Home was owned and operated by the Hunter family for three generations. Frank Hunter operated the business with his brother until personal animosities between them culminated in his brother leaving Hunter Funeral Home and purchasing Karpus Funeral Home located about two blocks from Hunter Funeral Home. The brother changed the name of his business to the Karpus-Hunter Funeral Home. Thereafter, Frank Hunter bought Hunter Funeral Home from his parents. The number of funerals handled by the Hunter Funeral Home decreased and Karpus-Hunter's business increased significantly. Hunter alleged that defendants' agents wrongfully directed many of Hunter Funeral Home's potential customers to Karpus-Hunter Funeral Home through the telephone companies' information services and telephone directory listings. Plaintiff sought damages for the alleged negligent, reckless, wilful, wanton, malicious, and intentional misconduct of the defendants. The court, Richard G. Boyce, J., granted partial summary judgment for the defendants, ruling that the Public Service Commission tariffs and regulations governed plaintiff's claim for damages resulting from defendants' ordinary negligence. The court, J. Richard Ernst, J., entered judgment for defendants on a jury verdict of no cause of action on the theories of wanton and wilful misconduct and intentional interference with business

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 64 Am Jur 2d, Public Utilities §§ 230, 232.
74 Am Jur 2d, Telecommunications § 20.
[3] 74 Am Jur 2d, Telecommunications § 65.
[4] 57 Am Jur 2d, Negligence § 76.
75 Am Jur 2d, Trial § 589.

relations. The court denied the plaintiff's motion for a new trial. The plaintiff appeals. *Held:*

The trial court erred in granting partial summary judgment for the defendants on the plaintiff's claim of ordinary negligence. The plaintiff was entitled to proceed on a theory of ordinary negligence and, if successful, was entitled to a recovery for the action based in tort. Once tortious conduct is properly alleged, a plaintiff may proceed in a court of general jurisdiction against a telephone company to recover full tort damages without regard to Public Service Commission tariffs or regulations. The Court of Appeals declined to order a retrial of the plaintiff's claim for wilful and wanton misconduct because the Court was not persuaded that the instructions to the jury on this claim were inconsistent with substantial justice.

The trial court did not err in refusing to give the plaintiff's requested instruction to the jury on the defendants' duty to plaintiff to provide customers with his proper telephone number because the requested instruction combined the separate questions of duty and specific standard of care.

The entry of judgment for the defendants of no cause of action should be affirmed. The partial summary judgment for defendants should be reversed and the case should be remanded to the circuit court where the plaintiff should be given an opportunity to pursue his negligence claim.

Affirmed in part and reversed in part.

1. TELECOMMUNICATIONS — PUBLIC SERVICE COMMISSION — TELEPHONE COMPANIES — CONTRACTS — TORTS.

The jurisdiction of the Public Service Commission relative to telephone companies is broad and comprehensive and, generally, prospective in operation; the commission is not a proper tribunal to decide a controversy after damage has been inflicted; only a court, not the Public Service Commission, can constitutionally award damages in a civil action for a telephone company's breach of contract or for negligence.

2. COURTS — UTILITIES — PUBLIC SERVICE COMMISSION.

A court of general jurisdiction is a proper forum if a plaintiff's cause of action is based upon a claim that a utility has violated Public Service Commission promulgated tariffs or codes or if the claim covers some action by a utility outside the regulation of the Public Service Commission; a party aggrieved by the provisions of a tariff or code promulgated by the Public Service Commission should seek relief by an attack upon those provisions before the Public Service Commission and from it to the

Ingham County Circuit Court; the code or tariff is part of the contract between the parties and limits of liability therein contained are presumptively valid and any claim based upon the contractual obligation of the parties is limited to the provisions of the tariff or code, however, the proper forum for a claim against a utility sounding in tort is a court of general jurisdiction of this state.

3. COURTS — TELEPHONE COMPANIES — NEGLIGENCE ACTIONS.
   There is no limitation on the authority of a court to award damages in a negligence action against a telephone company.

4. TORTS — JURY INSTRUCTIONS — DUTY — STANDARD OF CARE.
   Error did not result where a trial judge in an action based on tort refused to give an instruction to the jury requested by the plaintiff and that requested instruction combined the separate questions of duty and specific standard of care because the question of duty was properly to be resolved by the court rather than the jury and reviewed as a question of law.

*Sumpter & Loznak, P.C.* (by *Donn Hubbell),* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert J. Riley),* for General Telephone Company.

*Kane & Mack* (by *John P. Mack),* for Michigan Bell Telephone Company.

Before: D. F. WALSH, P.J., and ALLEN and T. GILLESPIE,* JJ.

D. F. WALSH, P.J. Plaintiff, Frank Hunter, doing business as Hunter Funeral Home, sought damages from defendants, General Telephone Company and Michigan Bell Telephone Company, for losses in profits resulting from alleged inadequacies in directory assistance services rendered to plaintiff's potential customers by defendants' agents. After a protracted trial, a jury found no cause of action and judgment was entered for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendants. Plaintiff appeals the denial of his motion for new trial.

Hunter Funeral Home was established on Chisholm Street in Alpena in 1915 by plaintiff's grandfather. Plaintiff's father and mother later owned and operated the funeral home. Plaintiff began working there as a licensed funeral director in the mid-1950's, as did his brother Alex Hunter. Until 1969, the two brothers shared the responsibilities of serving the customers of the funeral home. In 1969, personal animosities between them culminated in Alex Hunter's leaving Hunter Funeral Home and purchasing Karpus Funeral Home, which was located on Chisholm Street about two blocks from Hunter Funeral Home. He changed the name of his funeral home to Karpus-Hunter Funeral Home. Soon thereafter, plaintiff bought Hunter Funeral Home from his parents.

According to plaintiff, the number of funerals handled by Hunter Funeral Home decreased significantly after his brother disassociated himself from the business, while Karpus-Hunter's business increased. It was plaintiff's claim that his decreased business was due, at least in part, to misconduct on the part of defendant telephone companies. According to plaintiff, defendants' agents wrongfully directed many of Hunter Funeral Home's potential customers to Karpus-Hunter Funeral Home.

Defendant General Telephone Company serves the Alpena area and provides local directory assistance to persons who call for information from within the Alpena area. Persons who desire information about Alpena telephone numbers and who are not located within the Alpena area are served by operators of defendant Michigan Bell Telephone Company, located in Saginaw.

According to plaintiff, the vast majority of the business of a funeral home is generated by telephone. In 1970, plaintiff became suspicious that there was a problem with the telephone companies' information services as they affected Hunter Funeral Home, and he discovered that the Alpena telephone directory contained a listing not only for Karpus-Hunter Funeral Home but also for Hunter-Karpus Funeral Home. Plaintiff's complaints led to the removal of the Hunter-Karpus listing.

Also in 1970, plaintiff began to make repeated telephone calls to defendants' information operators to make sure that they were giving out his telephone number when people requested the telephone number for Hunter Funeral Home. On the innumerable occasions when he made such calls, he was often given the telephone number for the Karpus-Hunter Funeral Home and was often asked if he wanted the telephone number for Alex Hunter or Frank Hunter. He made several complaints to individual operators and supervisors until 1979, when this lawsuit was started and when the problem was apparently rectified.

According to employees of defendant companies, repeated efforts were made to satisfy plaintiff and to ensure that telephone operators responded properly to requests for the telephone number of Hunter Funeral Home.

In his complaint, plaintiff sought damages for the alleged negligent, reckless, wilful, wanton, malicious, and intentional misconduct of defendants. Defendants moved for accelerated or summary judgment, alleging, *inter alia,* that exclusive jurisdiction over plaintiff's claim was vested in the Public Service Commission, that plaintiff had failed to state a cause of action in tort, and that defendants' liability, if any, was limited and con-

trolled by a Public Service Commission tariff. The court granted partial summary judgment for defendants, ruling that the tariff governed plaintiff's claim for damages resulting from defendants' ordinary negligence. The jury was asked to determine liability under two theories: wanton and wilful misconduct and intentional interference with business relations. On appeal, plaintiff challenges the court's refusal to permit the jury to consider defendants' liability to him for ordinary negligence.

The relevant liability provisions set forth in Michigan Bell Telephone Company Tariff MPSC No 7, Original Sheet No 6, and General Telephone Company of Michigan Tariff MPSC No 7, Original Sheet No 8, are, for all pertinent purposes, identical to that found in the following Public Service Commission regulation:

"The liability of the telephone utility for damages arising out of mistakes, omissions, interruptions, delays, errors, or defects in transmission, occurring in the course of furnishing service or facilities and not caused by the negligence of the customer, shall in no event exceed an amount proportionate to the charge to the customer for the period of service during which such mistake, omission, interruption, delay, defect, or error in transmission occurs." 1954 AC, R 460.1960(10.2).

The trial court in this case ruled that the limitations set forth in the regulation are valid, even when a tort is alleged, but that "the language specifically mistakes, errors and omissions, is broad enough to include ordinary negligence, but not gross negligence, recklessness, wilful and wanton or intentional misconduct".

In support of their respective positions, the parties each turn to *Valentine v Michigan Bell Telephone Co,* 388 Mich 19; 199 NW2d 182 (1972).

Plaintiff argues that he was entitled to present his entire claim of tortious conduct to the jury. Defendant Michigan Bell argues that, while claims for ordinary negligence may be filed in a court of general jurisdiction, plaintiff's claim was properly dismissed because the tariffs and regulation limit plaintiff's recovery to charges incurred and plaintiff was never billed for phone services provided to him by Michigan Bell. Defendant Michigan Bell further argues that plaintiff failed in his burden of proving damages proximately caused by Michigan Bell. Defendant General Telephone argues that plaintiff's claim is essentially one for breach of contract and that the regulation and tariffs limit his recovery. Defendant General Telephone further asserts that the Public Service Commission has exclusive jurisdiction over "this essentially contractual dispute" and also joins in defendant Michigan Bell's claim that plaintiff did not present sufficient evidence in support of any of his various theories of liability.

We have carefully considered the parties' arguments and, from a policy standpoint, we are persuaded that defendants' claims that their liability in this case should be governed by the tariffs and regulation are sound. On the authority of binding precedent, however, we must reverse entry of partial summary judgment for defendants and remand for trial on plaintiff's theory of ordinary negligence.

In *Harbaugh v Citizens Telephone Co,* 190 Mich 421; 157 NW 32 (1916), the plaintiff sued the defendant telephone company for wrongful refusal to connect plaintiff's telephone. The Supreme Court held that the plaintiff's claim sounded in tort and that the measure of recoverable damages was not determined by the parties' contract.

The Supreme Court again considered telephone company liability in 1954, when General Telephone Company, as an affirmative defense, relied on Public Service Commission regulations in its attempt to escape liability to one of its customers for negligent assignment of a telephone number. *Muskegon Agency, Inc v General Telephone Co of Michigan,* 340 Mich 472; 65 NW2d 748 (1954). In that case, the Supreme Court affirmed the trial court's ruling that the plaintiff was not confined to recovery for breach of contract but was entitled to sue in tort and, if successful, to recover tort damages:

"The trial judge was correct in holding that the defendant in an action sounding in tort was not entitled to assert the 'affirmative defense'.

\* \* \*

"The jurisdiction of the public service commission under the statutory provisions is broad and comprehensive. Yet that jurisdiction has generally been prospective in operation. However, it is not a proper tribunal to decide a controversy after damage has been inflicted. This is a civil action to recover damages for breach of contract or for negligence. The commission has no jurisdiction to award plaintiff damages or to reimburse plaintiff for its losses. Only a court, in accordance with due process, can constitutionally award damages in a civil action.' *Muskegon Agency, supra,* p 482.

When the plaintiff was successful on remand, the defendant General Telephone Company appealed, challenging the jury verdict. *Muskegon Agency, Inc v General Telephone Co,* 350 Mich 41; 85 NW2d 170 (1957). Citing its earlier opinion, the Supreme Court rejected the defendant's contention that the question of the adequacy of its service was for the Public Service Commission and not for the courts. *Muskegon Agency, supra,* p 53.

The Supreme Court's most recent discussion of telephone company liability is found in *Valentine v Michigan Bell Telephone Co, supra,* where the Court dealt with the tariffs and regulation at issue in this case, reaffirmed its earlier decisions, and stated:

"If a plaintiff's cause of action is based upon a claim that the utility has violated Public Service Commission promulgated tariffs or codes, or if the claim covers some action by the utility outside of the regulations of the Public Service Commission, a court of general jurisdiction is the proper forum. On the other hand, the code or tariff is part of the contract between the parties and limits of liability therein contained are presumptively valid. Any claim based upon the contractual obligation of the parties is limited to validly promulgated provisions of the tariff or code within the authority of the Public Service Commission. Ordinarily, a party aggrieved by the provisions of a tariff or code should seek relief by an attack upon those provisions before the Public Service Commission and from it to the Ingham County Circuit Court. While the contractual obligations of the parties may be determined by the rules, tariffs and regulations of the Public Service Commission, such is not the case with regard to tortious conduct. *Harbaugh, supra,* and *Muskegon Agency* cases, *supra,* have clearly established that the proper forum for a claim sounding in tort is a court of general jurisdiction of this state." 388 Mich 25-26.

Although the Court affirmed summary judgment for defendant telephone company because of plaintiff Valentine's failure to state a cause of action in tort, GCR 1963, 117.2(1), the Court's discussion appears to affirm the notion that, once tortious conduct is properly alleged, a plaintiff may proceed in a court of general jurisdiction against a telephone company to recover full tort damages without regard to 1954 AC, R 460.1960(10.2). There is

no indication in *Valentine* that any tort action against a telephone company which is properly brought in a court of general jurisdiction is nonetheless subject to the limitations on liability set forth in the regulation and tariffs.

The *Valentine* decision does not support recognition of a distinction among various levels of tortious conduct. Nor do the regulation and tariffs in this case necessarily support such distinction. Compare the tariffs or regulations involved in the following cases, which expressly exempt such conduct as gross negligence or wilful acts from the protection of the liability limitations: *Sommer v Mountain States Telephone & Telegraph Co,* 21 Ariz App 385; 519 P2d 874 (1974); *Tate v Mountain States Telephone & Telegraph Co,* 647 P2d 58 (Wy, 1982); *Warren v New York Telephone Co,* 70 Misc 2d 794; 335 NYS2d 25 (1972). Courts of other jurisdictions have dealt with yet another variation on a tariff, which exempts certain negligent conduct from protection. See, *e.g., Southern Bell Telephone & Telegraph Co v Ivenchek, Inc,* 130 Ga App 798; 204 SE2d 457 (1974); *Southwestern Bell Telephone Co v Rucker,* 537 SW2d 326 (Tex Civ App, 1976). In these cases, courts have generally held that whatever limited protection for negligent conduct is granted by the tariff such limitation does not extend to wilful misconduct or gross negligence. See, also, *Holman v Southwestern Bell Telephone Co,* 358 F Supp 727 (D Kan, 1973).[1]

It has been noted by one court of another jurisdiction that the *Muskegon Agency* case can perhaps be reconciled with the great weight of authority—which upholds regulation and tariff limitations—by reading the Supreme Court's decision

[1] For a general discussion of telephone company liability, see Anno: *Liability of Telephone Company to Subscriber for Failure or Interruption of Service,* 67 ALR3d 76.

as based on its determination that the asserted regulation did not deal with the particular service deficiency of which the plaintiff was complaining. *Warner v Southwestern Bell Telephone Co,* 428 SW2d 596 (Mo, 1968). Also see *Valentine v Michigan Bell Telephone Co, supra,* p 24, where Michigan Bell's attempt to distinguish the *Muskegon Agency* case on that ground was noted, but not resolved, by the Supreme Court. But, in any event, the Supreme Court's discussion in *Muskegon Agency* indicates no limitation on the authority of a court to award damages in a negligence action against a telephone company, 340 Mich 482, *supra,* and *Valentine* reaffirms that principle.

Further uncertainty in this area has followed from the *result* in *Valentine.* The Supreme Court found that the plaintiff in *Valentine* had not pleaded "acts or conduct of defendant that would constitute negligence, gross negligence, fraud, misrepresentation, or some other tort". 388 Mich 30. We respectfully disagree with the Supreme Court's assessment of the plaintiff's allegations in the *Valentine* case, see 388 Mich 26-28, and we invite the Supreme Court to clarify the significance of its holding in light of its extensive discussion of jurisdiction and tariff applicability.

While we are persuaded that the regulation is essentially emasculated by the Supreme Court's decision in *Valentine,* and that the trial court's decision was reasonable, we are nonetheless forced to reverse entry of partial summary judgment for defendants. Plaintiff is entitled to proceed on a theory of ordinary negligence and, if successful, is entitled to tort recovery.[2]

---

[2] Contrary to defendants' assertions, it cannot be said as a matter of law that plaintiff did not present sufficient evidence to warrant submission of a claim of negligence to the trier of fact.

Of the remaining issues raised by plaintiff, only one merits discussion. He complains of the trial court's failure to instruct the jury that "defendants owe a duty to plaintiff to provide customers with his properly listed phone number". Instead, the court instructed the jury that plaintiff had to prove that defendants had "a duty to plaintiff as a phone subscriber to accurately furnish the phone number of Hunter Funeral Home to persons requesting the phone number of Hunter Funeral Home from defendants' information operators". Plaintiff argues that the instructions impermissibly left the determination of duty to the jury.

Plaintiff's requested instruction was deficient in that it combined the separate questions of duty and specific standard of care. See *Moning v Alfono,* 400 Mich 425, 438; 254 NW2d 759 (1977), *reh den* 401 Mich 951 (1977).[3] There was, therefore, no error in the court's refusal to give that instruction. Nor was there error in the court's apparent failure to decide the duty question. See *Moning v Alfono, supra,* pp 436-437. The principal question argued to the jury by the parties in their closing arguments was the applicable standard of care. Their respective theories focused exclusively on that question and on the issue of damages. There is no challenge to the adequacy of the court's presentation of those issues. We are not persuaded that the instructions in this case were inconsistent with substantial justice and, therefore, decline to order a retrial of plaintiff's claim for wilful and wanton misconduct. GCR 1963, 529.1.

Entry of judgment of no cause of action is affirmed but partial summary judgment for defen-

---

[3] *Moning v Alfono, supra,* was a negligence case. Although the instant plaintiff's claim for negligence was dismissed, the question of duty was relevant to his claim for wanton and wilful misconduct.

dants is reversed and this cause is remanded to the circuit court where plaintiff shall be given an opportunity to pursue his negligence claim.

No costs, neither party having prevailed in full.