L. STARKS CO. *v.* GRAND RAPIDS & INDIANA RAILWAY CO.

1. EVIDENCE—CARRIERS—BOOKS AND RECORDS.

In reviewing a verdict and judgment in favor of a defendant carrier against which plaintiff brought action to recover demurrage charges made for a delay caused by freezing weather, testimony offered by plaintiff from its books that other car loads of produce had suffered damage by freezing during the same period, will not be considered competent, although excluded on defendant's objection which was based on other grounds, the sufficiency of which was questioned by appellant.

2. CARRIERS — DEMURRAGE CHARGES — REASONABLENESS — INTERSTATE COMMERCE.

A shipper seeking to recover money paid to a carrier for demurrage charges, made in accordance with schedules filed with the interstate commerce commission, which charges plaintiff claims were unreasonably imposed, because certain cars of potatoes were detained en route to prevent damage by freezing, must invoke redress through the interstate commerce commission, since it alone is vested with power originally to entertain proceedings for the alteration of an established and published schedule. 34 U. S. Stat. 584, U. S. Comp. Stat. Supp. 1909, p. 1149; 32 U. S. Stat. 847, U. S. Comp. Stat. Supp. 1909, p. 1138.

Error to Kent; McDonald, J. Submitted April 11, 1911. (Docket No. 75.) Decided May 8, 1911.

Assumpsit by the L. Starks Company against the Grand Rapids & Indiana Railway Company to recover money paid defendant. Judgment for defendant. Plaintiff brings error. Affirmed.

*Smedley, Hall & Gillard*, for appellant.

*James H. Campbell*, for appellee.

OSTRANDER, C. J. The defendant demanded and the plaintiff paid $70 demurrage charges on certain car loads

of potatoes, and in a suit brought to recover a portion of the amount so paid a jury returned a verdict for the defendant.   The defendant company will not allow refrigerator cars in transit to be heated with stoves placed in the cars, but will allow stoves to be set up in such cars standing upon its tracks.   It permits fires to be maintained in box cars in cold weather for the purpose of keeping the contents of the cars from freezing while such cars are in transit.   It had on file with the interstate commerce commission, and in force, a schedule of demurrage charges and rules according to which such charges are assessed and collected.   The cars in question were refrigerator cars, six in number, which had been loaded with potatoes at points north of Grand Rapids and forwarded to Grand Rapids for reconsignment; they were there reconsigned, each of them, to points outside of the State in the months of January and February, 1908.   Testimony for the plaintiff tended to prove that it is not safe to ship potatoes in car load lots when the temperature ranges below from 20 to 23 degrees above zero, and that in the period from January 15 to February 11, 1908, the mercury ranged from 2 degrees above zero to 36 above; there being 16 days in this period when it was less than 22 degrees above zero.

Briefly stated, the claim of the plaintiff is that each of these cars was held for some period of time at Grand Rapids on account, and solely on account, of the weather, and to preserve the potatoes; that for such periods as the cars were so held defendant should not have charged demurrage, because it is, as matter of law, unreasonable to exact from a shipper demurrage charges when safe shipment is interfered with by the elements.

It is the contention of the defendant (1) that the reasonableness of its demurrage charges upon cars employed in interstate shipment is not a question to be determined by the courts, and is to be determined by the interstate commerce commission.   (2) That as its rules, on file with the interstate commerce commission, permit demurrage

charges under the circumstances related—at least make no provision for an exception in the case of cars delayed as the cars in question were—it was the legal duty of the defendant to assess and collect the charges it made, and it was the plaintiff's duty to pay them. It is a further contention of the defendant that, in any event, the case was submitted to the jury upon plaintiff's theory, without prejudicial error to the plaintiff, and that the verdict and judgment is therefore conclusive of plaintiff's right.

The court instructed the jury that if they found that the plaintiff did not ship out the potatoes, because it had no orders for them—had not sold them—the verdict should be for defendant; that if the cars were detained because of the weather they should determine whether the rule prohibiting the heating of refrigerator cars was a reasonable rule; if it was a reasonable rule, they should then determine whether the other rule requiring payment of demurrage under the circumstances was a reasonable rule. Later the court said—

"That the fact, if it is a fact, that the plaintiff held these cars in Grand Rapids, because fires would not be allowed in them while in transit, and because it was too cold to ship the potatoes without fires in the cars, does not exempt plaintiff from paying for the detention of the cars while they were held here, otherwise called demurrage, * * * and which the plaintiff did pay and seeks in this suit to recover back, unless the rule prohibiting fires was an unreasonable rule."

Further along in the charge the court said:

"It appears by the evidence in this case that the defendant has a rule which absolutely prohibits the firing of refrigerator cars while in transit. It also appears that the defendant charges for cars which stand on its tracks more than 48 hours at the rate of $1 per day and for fractions thereof. These are rules made by the Grand Rapids & Indiana Railway Company itself; they are not laws, and can only bind the plaintiff in this case as far as the same are reasonable, and whether or not these rules are reasonable under the circumstances of the case is a ques-

tion for you to determine from all of the evidence in the case."

Again the jury was instructed as follows:

"I charge you that if you find that the reason that these cars were not shipped out by the plaintiff from January 15 to February 11, 1908, was because the weather was so cold that the plaintiff could not ship its cars of potatoes without great danger. of freezing, and that the railroad company would not allow the cars to go out with fires in them and protect them from freezing, and that all risk from freezing was upon the plaintiff, that it is for you to determine whether or not such a rule is reasonable, and if you find that it is not reasonable your verdict should be for the plaintiff in this case."

We interpret the charge, as a whole, to mean that, if the cars were not held because of the weather, or if the rule prohibiting the use of stoves in refrigerator cars in transit was reasonable, the plaintiff could not recover. This was not the plaintiff's theory which, as clearly indicated in a request to charge, was one requiring the court to determine, as matter of law, that demurrage charges, exacted during periods when it was too cold to ship potatoes in unheated cars, were unreasonable exactions. There was testimony tending to prove that the cars were delayed because there was no buyer, and not on account of the weather. There was testimony tending to prove that the rule of defendant, refusing the use of stoves in refrigerator cars in transit, was the rule also of all, or nearly all, of the other railroads in the State during the particular period. There was a general verdict for defendant, and it is impossible to ascertain whether the jury considered the question of the reasonableness of such a rule. Whether they did or not, it is clear that plaintiff is concluded by the verdict, unless it was error to refuse the instruction that plaintiff was not liable for delays occasioned by the weather, or unless some error was committed during the course of the trial affecting the issues submitted to the jury.

The single complaint which is made is based upon the

ruling excluding testimony of losses by freezing of potatoes in other like cars shipped out during the period in question. It appears that plaintiff did reconsign and ship a large number of cars, which tended to prove that the delayed cars were not delayed on account of the weather. It is said that the excluded testimony would have established the fact that potatoes were frozen in cars which were shipped, which fact furnished a reason for delaying the cars in question. In discussing the question, we are not to be understood as holding that the reasonableness of a rule of common carriers affecting the movement of freight cars, containing stoves and fire, is a question for a jury.

The offer of testimony which was made was to show "by the books" that plaintiff had sustained a loss on certain cars of potatoes. The competency of the books for such a purpose was not the ground of the objection or of the ruling, but we cannot assume they were competent evidence of the fact.

Should the court have determined, as matter of law, that defendant's demurrage charges were unreasonable? The rate of demurrage which was charged is not questioned. It was a proper rate, if any charge was to be made. The act of Congress of June 29, 1906, chap. 3591, 34 U. S. Stat. 584 (U. S. Comp. Stat. Supp. 1909, p. 1149), to regulate commerce, known as the Hepburn act, requires every common carrier, subject to the provisions of the act, to file with the commission created by the act schedules showing all rates, fares, and charges for transportation. Carriers are not permitted to charge or demand greater, or less, or different, compensation than specified in the tariffs filed and in effect at the time. By section 1 of the act of Congress of February 19, 1903, chap. 708, 32 U. S. Stat. 847 (U. S. Comp. Stat. Supp. 1909, p. 1138), known as the Elkins act, the rate filed by a carrier with the commission is conclusively deemed to be the legal rate as against the carrier, and a departure from it is made an offense. A charge made by a shipper in the

nature of demurrage must be considered, not alone with respect to the amount of money exacted, but with respect, also, to the circumstances attending its imposition and supposed to warrant it. The reasonableness of the charge depends, in part at least, upon the reasonableness of the rule according to which it is made.

Assuming that at the common law the shipper has a right of action against the carrier to recover an unreasonable sum exacted as a condition for the carriage, or for the delivery, of goods, and assuming, further, that the courts of the State have jurisdiction to afford relief consistent with the published rates and charges filed by common carriers pursuant to the interstate commerce act, we are of opinion that the jurisdiction of courts to determine the reasonableness of the tariff published and filed with the interstate commerce commission is denied by the Supreme Court of the United States, in *Texas, etc., R. Co.* v. *Oil Co.*, 204 U. S. 426 (27 Sup. Ct. 350), in which it is held—

"That a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the interstate commerce commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable."

The judgment is affirmed.

BIRD, HOOKER, BLAIR, and STONE, JJ., concurred.