**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
**Maura D. Corrigan**

Justices
**Michael F. Cavanagh**
**Elizabeth A. Weaver**
**Marilyn Kelly**
**Clifford W. Taylor**
**Robert P. Young, Jr.**
**Stephen J. Markman**

FILED JULY 27, 2001

THE TRAVELERS INSURANCE COMPANY,

    Plaintiff-Appellee,

v                                     No. 116610

THE DETROIT EDISON COMPANY,

    Defendant-Appellant,

and

CITY OF DETROIT WATER AND SEWERAGE DEPARTMENT,

    Nonparticipating Defendants.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

    We granted leave to appeal in this case, directing the parties to address: (1) whether the doctrine of primary jurisdiction is properly characterized as a "defense," and, if so, (2) whether such a defense is waived by a party's failure to raise it in the first responsive pleading. 463 Mich 906

(2000), citing *Rinaldo's Construction Corp v Michigan Bell Telephone Co*, 454 Mich 65, 70; 559 NW2d 647 (1997), and *Grand Blanc Landfill Inc v Swanson Environmental Inc*, 448 Mich 859; 528 NW2d 734 (1995).

For the reasons set forth below, we hold that the doctrine of primary jurisdiction is not a defense, but rather a prudential doctrine of judicial deference and discretion. We further conclude that the doctrine is not waivable, and the circuit court did not err in deferring plaintiff's claim to the Michigan Public Service Commission (MPSC). Therefore, we reverse the judgment of the Court of Appeals and reinstate the decision of the Wayne Circuit Court.

## I. FACTUAL BACKGROUND

Endeavoring to service certain customers in downtown Detroit, Detroit Edison Company (Detroit Edison) sent steam power to Heaven on Earth Inn.[1] Because repairs were being performed on one of its steam lines in January of 1994, Detroit Edison shut off steam power to the Inn. As a result, the Inn's water pipes froze, and flood damage resulted. The Inn was insured by appellee, Travelers Insurance Company. After paying on the claim filed by the Inn, Travelers sought subrogation from Detroit Edison. On October 17, 1995,

---

[1] Detroit Edison provided the steam power pursuant to tariff no. 4, which had been filed and approved by the MPSC.

Travelers filed several tort claims and a breach of contract claim before the Wayne Circuit Court. On March 19, 1996, the court granted partial summary disposition on the tort claims in Detroit Edison's favor. The sole remaining claim that survived this disposition was the breach of contract claim.[2]

Nearly twelve months after the circuit court's grant of partial summary disposition, and seventeen months after the original complaint had been filed, Travelers moved to amend its original complaint. The circuit court granted, in part, Travelers motion. Detroit Edison countered with an answer to Travelers amended complaint and, for the first time, asserted the doctrine of primary jurisdiction. Detroit Edison claimed that the MPSC was the agency with the sole authority to assert jurisdiction over the contract dispute between itself and Travelers.[3] After this assertion, Detroit Edison moved for

_____

[2] Specifically, in count III of the complaint, Travelers alleged that Detroit Edison had contracted with the Inn to provide steam service to the Inn's property. Travelers further alleged that Detroit Edison's cessation of steam service was a breach of its contractual obligations, and that such breach caused foreseeable damage to the Inn's property. Travelers claimed that the Inn sustained property damage in the amount of $1,632,710.00.

[3] Detroit Edison's assertion that the MPSC had primary jurisdiction over the action was based on the breach of contract claim brought by Travelers, alleging that Detroit Edison had violated general rule no. 4 of MPSC tariff no. 4. That rule states:

> The Company will endeavor, but does not guarantee, to furnish continuous and adequate steam

3

summary disposition under MCR 2.116(C)(4)[4] on the ground that the court lacked subject-matter jurisdiction.[5]

Entertaining the parties' oral arguments on Detroit Edison's motion, the circuit court ruled that Detroit Edison could rely on the doctrine of primary jurisdiction, even though the doctrine was first asserted in an answer to an amended complaint over eighteen months after the filing of the initial complaint in the case. The circuit court noted a conflict among jurisdictions regarding whether primary jurisdiction can be asserted after judicial proceedings have

service . . . . Service is subject to interruption by agreement, by accident, or by necessity of maintenance or system operation or other causes not under the control of the Company.

The Company will not be liable for damages, either direct or consequential, caused by any interruption of service . . . due to strike, accident, . . . storm or flood, or other natural disasters or any cause whatsoever beyond its control except such as may result from failure of the Company to exercise reasonable care and skill in furnishing the service. [237 Mich App 485, 487; 603 NW2d 317 (1999).]

[4] That rule provides that a motion for summary disposition

may be based on one or more of these grounds, and must specify the grounds on which it is based:

* * *

(4) The court lacks jurisdiction of the subject matter.

[5] Detroit Edison also relied on this Court's decision in *Rinaldo's, supra.*

4

commenced, or whether the assertion has been waived by a party's failure to raise it.  Citing *Rinaldo's, supra* at 70, the circuit court stated:

> Michigan courts recognize the concept of primary jurisdiction as, not so much divesting a court of its subject-matter jurisdiction in favor of the exclusive jurisdiction of an administrative agency, but a "concept of judicial deference and discretion," and that it exists as "recognition of the need for orderly and sensible coordination of the work of agency and of courts."

Concerning the present case, the circuit court held that "while [Detroit] Edison ha[d] defended the case and ha[d] participated in discovery, nonetheless, the case ha[d] not yet come to an adjudicatory phase with respect to the breach of contract claim."  The court found that the reasons for not allowing waiver of primary jurisdiction expressed in *Dist of Columbia v Thompson*, 570 A2d 277 (DC App, 1990), also applied here.[6]  Further, the court stated that this result was consistent with the direction of the court in *White Lake Ass'n v Whitehall*, 22 Mich App 262, 284; 177 NW2d 473 (1970), to wit, that the primary jurisdiction doctrine should not be applied where "judicial proceedings have advanced to a point where it would be unfair to remit the plaintiff to another and duplicative proceeding" and where "a court of equity might

---

[6]  *Thompson* held that the primary jurisdiction doctrine was not waivable and that policy considerations dictated against ignoring the doctrine, even after judicial proceedings had commenced.

5

well conclude that the proper administration of justice requires it to retain jurisdiction and itself to decide the matter." The circuit court stated that here there was no danger of duplicative proceedings as the plaintiff's breach of contract claims had not yet been tried.

## II. APPELLATE HISTORY

Detroit Edison's victory was short lived. In a published opinion, the Court of Appeals reversed the circuit court's grant of summary disposition holding that Detroit Edison had *waived* primary jurisdiction by failing to raise the doctrine until eighteen months had passed from the time of the filing of the original complaint.

In the Court of Appeals view, the trial court erred when it ruled that primary jurisdiction was a defense similar to that of subject-matter jurisdiction, and that it could be raised at any time during the proceedings. *Id*. at 492. Citing LeDuc, Michigan Administrative Law, § 10:43, at 70, the Court of Appeals concluded that "[b]ecause the defense of primary jurisdiction says nothing about the power of the court to resolve a dispute before it, there would appear to be no policy that justifies equating primary jurisdiction with subject-matter jurisdiction for purposes of MCR 2.111(F)(3) and MCR 2.116(C)(4)." *Id*. at 493.

Also, citing *Campbell v St John Hosp*, 434 Mich 608, 613-615; 455 NW2d 695 (1990), the Court of Appeals drew an analogy between asserting the doctrine of primary jurisdiction as a defense and raising an arbitration agreement as an affirmative defense. The Court of Appeals noted that, in *Campbell*, this Court "recognized that despite the Malpractice Arbitration Act . . . and the uniform arbitration act . . . the circuit court was not deprived of jurisdiction to decide medical malpractice claims where the complaining party [had] signed a valid arbitration agreement." 237 Mich App 493 (internal citations omitted). The Court of Appeals determined that *Campbell* held that the failure of a party to assert, as an affirmative defense, the existence of an arbitration agreement in its original responsive pleading constituted a waiver of that defense. *Id*. at 494, citing *Campbell*, *supra* at 615-617. The Court concluded that the "affirmative defense of primary jurisdiction, which does not deprive the trial court of subject-matter jurisdiction, is more closely akin to the affirmative defense of the existence of an arbitration agreement and should be treated similarly." *Id*. at 494. In contrast, the Court refused to "equate the defenses of primary jurisdiction and subject—matter jurisdiction . . . ." *Id*. Thus, the Court of Appeals likened the doctrine of primary jurisdiction to those other affirmative defenses noted in MCR

7

2.116(C)(7) that must be pleaded in response to a complaint in order to be preserved.[7]

The Court of Appeals concluded that the doctrine of primary jurisdiction was an "affirmative defense," and, therefore, pursuant to MCR 2.111(F)(2)[8] and (3),[9] Detroit Edison's failure to timely raise the defense constituted a waiver. *Id*. at 494-95, citing *Stanke v State Farm Mut Auto*

---

[7]   MCR 2.116(C) provides that a motion for summary disposition "may be based on one or more of these grounds, and must specify the grounds on which it is based . . . ." Paragraph 7 provides that a motion for summary disposition may be based on an assertion that

> [t]he claim is barred because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, *an agreement to arbitrate*, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action.

[8]   MCR 2.111(F)(2) states:

> A party against whom a cause of action has been asserted by complaint, cross-claim, counterclaim, or third-party claim must assert in a responsive pleading the defenses the party has against the claim. A defense not asserted in the responsive pleading or by motion as provided by these rules is waived, except for the defenses of lack of jurisdiction over the subject matter of the action, and failure to state a claim on which relief can be granted.

[9]   MCR 2.111(F)(3) provides: "Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118."

8

*Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993).[10]

### III.  THE DOCTRINE OF PRIMARY JURISDICTION

The doctrine of primary jurisdiction originated in *Texas & Pacific R Co v Abilene Cotton Oil Co*, 204 US 426; 27 S Ct 350; 51 L Ed 553 (1907).  There, the United States Supreme Court examined "the scope and effect of the [Interstate Commerce A]ct to regulate commerce upon the right of a shipper to maintain an action at law against a common carrier to recover damages because of the exaction of an alleged unreasonable rate . . . ."  *Id*. at 436.  The Court concluded that the "shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with the power originally to entertain proceedings for the alteration of an established schedule . . . ."  *Id*. at 448.  Since the pronouncement of the doctrine in *Texas & P R*, the Supreme Court has expanded application of the doctrine of primary jurisdiction to other agencies, recognizing their

_____

[10]  *Stanke* also relied on *Campbell*, *supra* at 616, ns 5 & 6, which noted that "case law recogniz[ed] the existence of affirmative defenses not specifically set forth in MCR 2.111(F)(3)(a)" and those defenses, failure to state a claim and subject-matter jurisdiction, that cannot be waived if omitted from a responsive pleading.

9

regulatory areas of expertise.[11]

Following *Texas & P R*, *supra*, this Court stated that "the jurisdiction of courts to determine the reasonableness of the tariff published and filed with the Interstate Commerce Commission is denied by the Supreme Court of the United States . . ." *L Starks Co v Grand Rapids & I R Co*, 165 Mich 642, 647; 131 NW 143 (1911), citing *Texas and P R*. Eventually, Michigan articulated this doctrine as focusing upon "whether the questions . . . involved are administrative in character such as to preclude the state court from inquiring into and adjudicating them without application having been first made to the commission." *Anderson v Chicago M & St P R Co*, 208 Mich 424, 429; 175 NW 246 (1919). As with the Supreme Court of the United States, this Court recognized application of the

---

[11] See, e.g., *Communications Workers of America v Beck*, 487 US 735, 743; 108 S Ct 2641; 101 L Ed 2d 634 (1988) (holding that employees may not circumvent the primary jurisdiction of the National Labor Relations Board simply by casting statutory claims as violations of the union's duty of fair representation, a claim ordinarily sounding in tort); *Federal Communications Comm v ITT World Communications Inc*, 466 US 463, 468; 104 S Ct 1936; 80 L Ed 2d 480 (1984) (applying the doctrine of primary jurisdiction to the Federal Communications Commission and stating that the district court should have dismissed the plaintiff's claim where the central element of the complaint was the agency's past conduct); *San Diego Building Trades Council v Garmon*, 359 US 236, 245; 79 S Ct 773, 3 L Ed 2d 775 (1959) (holding that "[w]hen an activity is arguably subject to [sections] of the [National Labor Relations Act], the States as well as the federal courts must defer to the exclusive competence of the [National Labor Relations Board] if the danger of state interference with national policy is to be averted").

primary jurisdiction doctrine to agencies other than the Interstate Commerce Commission. See, e.g., *Abel v Behrendt*, 320 Mich 616, 621; 32 NW2d 4 (1948). There, this Court affirmed a trial court's refusal to grant a motion to dismiss on grounds that the plaintiffs could not bypass the Civil Service Commission by requesting a court to enter a declaratory judgment "blanketing the plaintiffs into civil service status."

In addition, the primary jurisdiction of the MPSC, the administrative agency in charge of the tariff under consideration in the instant case, was recognized in *Consumers Power Co v Michigan*, 383 Mich 579, 581; 177 NW2d 160 (1970). There, the Court stated that "[t]he primary jurisdiction and control of electric utilities lies with the Public Service Commission." *Id*.

Later, this Court addressed what types of claims were subject to the primary jurisdiction of the MPSC. In *Valentine v Michigan Bell Telephone Co*, 388 Mich 19, 21; 199 NW2d 182 (1972), the plaintiff alleged breach of contract, gross negligence, fraud, and misrepresentation. *Id*. at 21. Defendant moved for summary disposition on the basis of the doctrine of primary jurisdiction, and the fact that the MPSC was currently reviewing a similar action brought by Valentine. *Id*. at 22. The trial court granted summary disposition and

the Court of Appeals affirmed, concluding that plaintiff's claims were based on inadequate service and equipment, claims over which the MPSC had primary jurisdiction. *Id*. This Court granted leave to appeal, and held that the plaintiff's complaint failed to set forth claims in negligence, gross negligence, fraud, misrepresentation, or some other tort that would bring subscribers' claims within the jurisdiction of the circuit courts. *Id*. at 30.

The most recent case concerning the immediate issue is *Rinaldo's*, *supra*. There, the issue presented was "whether a circuit court may entertain a cause of action against a telephone company *alleging negligence*, despite the MPSC's *primary jurisdiction* over customer claims arising under MPSC tariffs." *Id*. at 66-67, emphasis added. The Court held that "although a cause of action in tort against a telephone company or a claim that the company has violated the regulatory code or tariff may proceed in a court of general jurisdiction, the doctrine of primary jurisdiction require[d] dismissal of plaintiff's claim because it [arose] solely out of the contractual relationship between the telephone company and the plaintiff . . . ." *Id*. at 67.

## IV. PURPOSE OF THE DOCTRINE

The doctrine of primary jurisdiction is grounded in the

12

principle of separation of powers.[12]  The doctrine has been compared to the political question doctrine and the exhaustion doctrine, both of which are also concepts rooted in separation of powers principles.[13]

> "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, *and the like*—relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government."  [*Allen v Wright*, 468 US 737, 750; 104 S Ct 3315; 82 L Ed 2d 556 (1984) (emphasis added), quoting *Vander Jagt v O'Neill*, 226 US App DC 14, 26-27; 699 F 2d 1166 (1983) (Bork, J., *concurring*).]

*Allen* extensively discussed the principle of separation of powers and stated that the "several doctrines that have grown

---

[12]  *South Lake Worth Inlet Dist v Ocean Ridge*, 633 So 2d 79, 82 (Fla App, 1994) (noting the "companion concepts of primary jurisdiction and exhaustion of administrative remedies, which are in turn bound up with constitutional limitations on the separation of powers); *Good Fund Ltd v Church*, 540 F Supp 519, 540 (1982), rev'd on other grounds by *McKay v United States*, 703 F2d 464 (CA 10, 1983) (stating that "separation of powers is a basis of primary jurisdiction").  See also Hawkens, *The exhaustion component of the Mindes justiciability test*, 166 Military L R 67, 79 (stating that  exhaustion of administrative remedies doctrine "is a critical factor in an integrated, reviewability matrix that—like the political question doctrine and the primary jurisdiction doctrine—serves separation of powers concerns"); Talmadge, *Understanding the limits of power: Judicial restraint in general jurisdiction court systems*, 22 Seattle Univ L R 695, 715, n 65 (1999).

[13]  See note 12.  See also Davis, Administrative Law (3d ed), § 19.01, p 373, stating that the doctrine of primary jurisdiction "merges with the exhaustion doctrine."

13

up to elaborate that requirement are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Id.*, citing *Warth v Seldin*, 422 US 490, 498; 95 S Ct 2197; 45 L Ed 2d 343 (1975).

The doctrine of primary jurisdiction also reflects practical concerns regarding respect for the agency's legislatively imposed regulatory duties. Adhering to the doctrine of primary jurisdiction reinforces the expertise of the agency to which the courts are deferring the matter, and avoids the expenditure of judicial resources for issues that can better be resolved by the agency.[14] "A question of 'primary jurisdiction' arises when a claim may be cognizable in a court but initial resolution of issues within the special competence of an administrative agency is required." *Thompson*, *supra* at 288. Closely related is the rule requiring the exhaustion of administrative remedies:

> The doctrine . . . is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play *whenever enforcement of the claim requires the resolution of issues* which, under a regulatory scheme, have been placed within the special

---

[14] Talmadge, *supra* at 715, n 65.

competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. [*United States v Western P R Co*, 352 US 59, 63-64; 77 S Ct 161; 1 L Ed 2d 126 (1956), (emphasis added), citing *General American Tank Car Corp v El Dorado Terminal Co*, 308 US 422, 433; 60 S Ct 325; 84 L Ed 361 (1940).][15]

"The doctrine reflects the courts' recognition that administrative agencies, created by the Legislature, are intended to be repositories of special competence and expertise uniquely equipped to examine the facts and develop public policy within a particular field." Baron, *Judicial review of administrative agency rules: A question of timing*, 43 Baylor L R 139, 158 (1991). Thus, whether judicial review will be postponed in favor of the primary jurisdiction of an administrative agency "necessarily depends upon the agency rule at issue and the nature of the declaration being sought in the particular case." *Id*. at 159.

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. [*Western Pacific*, *supra* at 64.]

Several reasons have been advanced for invocation of the primary jurisdiction doctrine. First, the doctrine

---

[15] See also *Reiter v Cooper*, 507 US 258, 268-270, n 3; 113 S Ct 1213; 122 L Ed 2d 604 (1993), discussing the primary jurisdiction doctrine and the exhaustion of administrative remedies doctrine.

underscores the notion that administrative agencies possess specialized and expert knowledge to address issues of a regulatory nature. Use of an agency's expertise is necessary in regulatory matters in which judges and juries have little familiarity. *Western Pacific*, *supra* at 64, citing *Far East Conf v United States*, 342 US 570, 574; 72 S Ct 492; 96 L Ed 576 (1952). Thus, the doctrine is principally applicable to controversies involving regulatory agencies. Jaffe, *Primary jurisdiction*, 77 Harvard L R 1037, 1039 (1964). A second consideration relates to respect for the separation of powers and the statutory purpose underlying the creation of the administrative agency, the powers granted to it by the legislature, and the powers withheld. *Id*. This justification includes the principle that courts are not to make adverse decisions that threaten the regulatory authority and integrity of the agency. *Att'y Gen v Diamond Mortgage Co*, 414 Mich 603, 613; 327 NW2d 805 (1982). Third, the doctrine exists to promote consistent application in resolving controversies of administrative law. *Texas and P R*, *supra* at 440-441. By application of the doctrine,

> [u]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through

experience, and by more flexible procedure. [*Far East Conf*, *supra* at 574-575.]

In *Diamond Mortgage Co*, *supra*, this Court explained its adoption of these justifications for primary jurisdiction.

> In cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. [*Id*. at 612-613, quoting *Far East Conf*, *supra* at 574-575.]

Thus, this Court recognized application of the primary jurisdiction doctrine to all cases in which it was deemed that an administrative agency possessed superior knowledge and expertise in addressing recurring issues within the scope of their authority. Quoting *Western Pacific*, *supra* at 63-64, the Court concluded that "'[p]rimary jurisdiction' . . . applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ." *Diamond Mortgage*, *supra* at 613 (internal citations omitted).

V. Court of Appeals Decision

In our judgment, the Court of Appeals misinterpreted our recent pronouncements concerning the applicability of the

doctrine of primary jurisdiction. The Court of Appeals quoted *Rinaldo's, supra* at 70-74, stating that "the Legislature has broadly defined the power and jurisdiction of the MPSC over such matters, *without explicitly providing that this power and jurisdiction is exclusive*." 237 Mich App 493 (emphasis added). The Court of Appeals then interpreted this statement regarding the lack of reposing in the MPSC *exclusive jurisdiction* over matters regarding public utilities to mean that the circuit court could *not*, in this case, defer to the MPSC. *Id*. at 494-496. Clearly, this cannot be the case, as such a holding would deprive the courts altogether of discretion and deference, and would likewise deprive the agency of its principal authority to address issues that are within its competence. "In cases raising issues of fact not within the conventional experience of judges, or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Diamond Mortgage, supra* at 612.

In *Rinaldo's*, the circuit court, in applying the doctrine of primary jurisdiction, reasoned that there was no cause of action in tort where the relationship between the parties was purely contractual in nature, since any alleged duties owed plaintiff by defendant were governed by controlling MPSC tariffs. The Court of Appeals affirmed. This Court then

18

affirmed, as well.  Citing 2 Davis & Pierce, Administrative Law (3d ed), § 14.1, at 272, we reaffirmed the fundamental rationale of the doctrine of primary jurisdiction.  "Under the telephone act of 1913, the MPSC possessed the 'power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities, including . . . telephone . . . .'"  *Id*. at 74, citing MCL 460.6(1).[16]

While Michigan case law has unequivocally held that claims sounding in tort against public utilities are properly brought before the circuit courts, these holdings do not, expressly or by implication, preclude exercise by the MPSC of jurisdiction over those claims that have traditionally fallen

---

[16]  MCL 460.6 now provides:

The public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state . . . The public service commission is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of such public utilities. The public service commission is further granted the power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities, including electric light and power companies, whether private, corporate, or cooperative; gas companies, water, telegraph, oil, gas, and pipeline companies;  motor carriers;  and all public transportation and communication agencies other than railroads and railroad companies.

19

within its authority. *Rinaldo's, supra* at 69, *Valentine, supra* at 25-26, and *Thomas v Gen Telephone Directory Co*, 127 Mich App 788, 792; 339 NW2d 257 (1983) (stating that under *Valentine*, if the plaintiff's claim sounds in tort, it is for the court; if it is a claim on a contract, it is for the MPSC).[17]

---

[17] To the extent that *Valentine* and *Rinaldo's* are viewed as being in tension with one another with regard to application of the primary jurisdiction doctrine to claims sounding in tort, and to breach of contract claims, we suggest that this perception is incorrect. In *Valentine*, this Court stated, in dicta, that "[a] claim that sets forth facts showing a plaintiff suffered damage as a result of a violation of the tariffs and regulations *can* be entertained by a court of general jurisdiction . . . ." *Id*. at 30 (emphasis added). Clearly, this language does not suggest that the court's jurisdiction over such claims is exclusive. Furthermore, that statement was based on a mistaken premise. The Court in *Valentine* stated that "[t]he jurisdiction of the Public Service Commission is primarily prospective—a matter of promulgating regulations and setting rates." *Id*. Yet, an agency's power and authority must be measured by the statutory enactments from which it is created. *Att'y Gen v MPSC*, 231 Mich App 76, 78; 585 NW2d 310 (1998). It is clear from reading the enabling statute of the MPSC that the agency's jurisdiction extends well beyond the *Valentine* Court's purported restriction. For example, MCL 460.6 vests in the MPSC the "power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of such public utilities." Pursuant to MCL 460.6, the MPSC is also "granted the power and jurisdiction *to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities* . . . ." Id. (emphasis added), see also *Att'y Gen v MPSC, supra*. This includes the power and jurisdiction to hear and decide breach of contract claims. *Dominion Reserves Inc v Michigan Consolidated Gas Co*, 240 Mich App 216, 221; 610 NW2d 282 (2000); *Energy Reserves Inc v Consumers Power Co*, 221 Mich App 210, 216; 561 NW2d 854 (1997); *North Michigan Land & Oil Corp v Public Service Comm*, 211 Mich App 424, 437; 536 NW2d 259

20

The Court of Appeals also drew an analogy between the doctrine of primary jurisdiction and the affirmative defense of the existence of an arbitration agreement. 237 Mich App 493-494. We find the Court of Appeals analogy unpersuasive. The doctrine of primary jurisdiction applies where an administrative agency possesses expertise concerning specific claims over which it has authority and jurisdiction. To equate this doctrine with the affirmative defense of an arbitration agreement overlooks this rationale. While a court might prefer to have a malpractice claim submitted to arbitration, no principle of deference would compel the court to do so, as might be true in the case of primary jurisdiction. It would be no more difficult for a court than an arbitration panel to address medical malpractice claims. In the case of primary jurisdiction, however, the principle of deference to the agency's expertise compels courts, in certain circumstances and at their discretion, to suspend the action pending referral and resolution of the claims over which the agency with primary jurisdiction has authority and expertise. In this case, the MPSC clearly possessed the authority and expertise to consider Travelers' breach of contract claims under general rule no. 4 of MPSC tariff no. 4.

---

(1995); *Miller Bros v Public Service Comm*, 180 Mich App 227, 233; 446 NW2d 640 (1989).

21

Further, responding to the circuit court's conclusion that primary jurisdiction was similar to subject-matter jurisdiction, and therefore not subject to waiver, the Court of Appeals refused to equate these two doctrines. The Court of Appeals then concluded that such a decision required treating primary jurisdiction differently than subject-matter jurisdiction, to wit, that it could be waived if it had not been originally asserted. 237 Mich App 493. That subject-matter jurisdiction and primary jurisdiction are distinct doctrines is indisputable. However, it does not follow that, because the two doctrines are distinct, and because subject-matter jurisdiction is not susceptible to waiver, that primary jurisdiction *is* subject to waiver.

Subject-matter jurisdiction is not subject to waiver because it concerns a court's "abstract *power* to try a case of the kind or character of the one pending" *and is not dependent on the particular facts of the case.* *Campbell*, *supra* at 613-614 (emphasis added); see also *Harris v Vernier*, 242 Mich App 306, 319; 617 NW2d 764 (2000). A court either has, or does not have, subject-matter jurisdiction over a particular case. *Bowie v Arder*, 441 Mich 23, 39; 490 NW2d 568 (1992). Primary jurisdiction, on the other hand, is not subject to waiver because it is determined, not by a right to which the parties are entitled, such as an affirmative defense that may be

22

waived by a party's failure to assert it, but rather by prudential considerations concerning respect for the relationship between the court and the administrative agency, and the nature of the claims being addressed. It may be raised *whenever* a dispute can more appropriately be resolved by the administrative agency with authority over such claims. *Rinaldo's, supra* at 72. Thus, a determination of waiver in the case of primary jurisdiction does not depend on whether the doctrine is similar or dissimilar to subject-matter jurisdiction.

Further, the Court of Appeals mistakenly concluded that just because the doctrine of primary jurisdiction is not mentioned as an exception in MCR 2.111(F)(2), see footnote 8, it necessarily follows that it is a "defense" indistinguishable from the other defenses ordinarily subject to waiver within that court rule. This, too, ignores that primary jurisdiction is a doctrine, created not for the convenience of the parties and the efficiencies attendant to adhering to the court rules, but for consideration *"whenever* enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Rinaldo's, supra* at 71, quoting from *Western Pacific, supra* at 64 (emphasis added). Thus, primary jurisdiction does not fall

within the list of defenses found in MCR 2.116(C)(7), which, according to MCR 2.111(F)(2), must be asserted in order to be preserved. We now proceed to apply the doctrine of primary jurisdiction to the present case.

## VI. APPLICATION

We review the grant or denial of a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Here, the circuit court granted Detroit Edison's motion for summary disposition under MCR 2.116(C)(4) on the ground that the primary jurisdiction doctrine required deferral of Travelers' remaining breach of contract claim to the MPSC. Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are also reviewed de novo.[18] *Citizens for Common Sense in Government v Att'y Gen*, 243 Mich App 43, 50; 620 NW2d 546 (2000).

The circuit court did not err in concluding, as a matter

_____

[18] Primary jurisdiction and subject-matter jurisdiction are distinct legal doctrines. In this case, Detroit Edison raised the issue of primary jurisdiction in a motion for summary disposition under MCR 2.116(C)(4)(lack of subject-matter jurisdiction). Such a pleading was inapt, not only because the doctrines are distinct, but also because invocation of primary jurisdiction is not the equivalent of summary disposition as the latter represents a final disposition of a claim while the former merely defers a claim to an administrative agency. However, Detroit Edison's pleading affects neither the standard of review that we apply in reviewing the circuit court, nor the analysis of its substantive decision. Primary jurisdiction can be raised by the court sua sponte, or directly by any party.

of law, that the doctrine of primary jurisdiction was not waivable, and that the MPSC had primary jurisdiction over Travelers' remaining breach of contract claim. First, the doctrine of primary jurisdiction can be raised *"whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."* *Rinaldo's*, *supra* at 71, citing Western *Pacific*, *supra* at 64 (emphasis added). This language, which Michigan has adopted, *Diamond Mortgage Co*, *supra* at 613, does not place a restriction on when the doctrine may be asserted.[19] In *Western Pacific* at 64,

---

[19] We recognize that, as a prudential doctrine, primary jurisdiction does not always compel resort to the administrative agency. There may well be cases, for example, in which the invocation of primary jurisdiction is not appropriate because litigation with respect to the particular claim that would normally be subject to the jurisdiction of the administrative agency has "advanced to a point where it would be unfair to remit the [party] to another and duplicative proceeding . . . ." *White Lake Ass'n*, *supra* at 284. See also *Pace v Honolulu Disposal Service Inc*, 227 F3d 1150, 1156 (CA 9, 2000) (responding to an argument that a party had to raise the issue of primary jurisdiction in a cross-appeal, the court stated that the doctrine of primary jurisdiction is "unlike garden-variety defenses such as in personam jurisdiction, for it implicates the 'strong policy of judicial deference'" and its importance is such that "we raised the . . . doctrine sua sponte"); *Montgomery Co v Broadcast Equities*, 360 Md 438, 451; 758 A2d 995 (2000) (noting that the rule requiring the courts of appeal of Maryland to consider only issues that have been preserved recognized an exception by allowing the issue of primary jurisdiction to be raised sua sponte); *Williams Pipe Line Co v Empire Gas Corp*, 76 F3d 1491, 1496 (CA 10, 1996) (explaining that, because the doctrine of primary jurisdiction exists for the proper distribution of power between judicial and

25

the United States Supreme Court made clear that "in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views."  More recently, the same Court has described the effect of the doctrine as requiring "the [trial court] to . . . stay[] further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling."  *Reiter v Cooper*, 507 US 258, 268; 113 S Ct 1213; 122 L Ed 2d 604 (1993).  Thus, the Court explained, "[r]eferral of the issue to the administrative agency does not deprive the court of jurisdiction; *it has discretion* either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Id*. at 268-269 (emphasis added), citing *Carnation Co v Pacific Westbound Conf*, 383 US 213, 222-223; 86 S Ct 781; 15 L Ed 2d 709 (1966); *Mitchell Coal & Coke Co v Pennsylvania R Co*, 230 US 247, 266-67; 33 S Ct 916; 57 L Ed 1472; Jaffe, *supra* at 1055.

Second, consistent with a sense of deference to agency expertise, the circuit court reasoned that Travelers' claim was one that was anticipated and controlled by the tariff, and that application of § 4 of the tariff would depend on a factual inquiry best left to the determination of the MPSC.

administrative bodies and not for the convenience of the parties, a court may consider its application sua sponte).

26

The MPSC "possesses the degree of expertise with regard to the purpose and effect of the governing tariffs to decide whether the presumptively valid tariff provisions apply to particular facts that do not constitute tortious conduct or a violation of the code or tariff." *Michigan Basic Property Ass'n v Detroit Edison Co*, 240 Mich App 524, 533; 618 NW2d 32 (2000). Such matters should be deferred to the MPSC. *Id*.

Third, following from the rationale of deferring to the expertise of the agency, the circuit court also concluded that deferral would promote uniformity and consistency in the application of tariff no. 4. Specifically, the circuit court noted that judicial decision making over the type of claim involved in the instant case could lead to an imposition of liability that the MPSC itself might not otherwise recognize.

Fourth, it is clear from the record that no inconvenience to the parties has occurred concerning Travelers' remaining breach of contract claim. The claims sounding in tort were dismissed by partial summary disposition before the circuit court considered Travelers' claim of breach of contract, and Detroit Edison's claims that the breach of contract allegation should be deferred to the MPSC under the doctrine of primary jurisdiction. Any discovery that has been obtained by either party has been done so with regard to the original tort claims, but since the contract claim had not yet been

27

adjudicated, neither party has been unfairly disadvantaged. To the extent that the discovery that had been carried out could be utilized in the breach of contract claim before the MPSC, the circuit court concluded that such discovery as had occurred could only contribute to a swifter resolution of the matter by the MPSC. Further, since the doctrine of primary jurisdiction is one that requires "referral," but not necessarily dismissal of an action, neither party is precluded from seeking judicial review of the MPSC's decision after it has heard Travelers' claim. *Reiter*, *supra* at 268. Pursuant to the discretion afforded a court in determining whether specific claims have been properly brought before it, or whether those claims primarily deserve review by the administrative agency charged with authority over the issues raised, the circuit court did not commit legal error in determining that the remaining contract claim concerning the tariff could first be brought before the MPSC without unfairness or disadvantage to either party. The circuit court's opinion proceeded in great depth to explain its reasoning in this regard.[20]

---

[20] While seventeen months may appear to be a long time from the commencement of the lawsuit for Detroit Edison to have raised the doctrine, it should be noted that our decision in *Rinaldo's* had not yet been released before Detroit Edison's raising the issue. *Rinaldo's* was decided on March 4, 1997. Detroit Edison filed its amended pleading on April 1, 1997. *Rinaldo's* clarified what claims could be addressed by the MPSC

Fifth, the circuit court stated that the doctrine of primary jurisdiction applies where there is "recognition of the need for orderly and sensible coordination of the work of agency and of courts." *Rinaldo's, supra* at 70. The circuit court had discretion to determine that, as a matter of law, the breach of contract action based on MPSC general rule no. 4, tariff 4, should be first determined by the MPSC. This rationale has found support in the decisions of other courts that have concluded that the doctrine of primary jurisdiction cannot be waived "since the doctrine exists for the proper distribution of power between judicial and administrative bodies and not for the convenience of the parties." *Distrigas of Mass Corp v Boston Gas Co*, 693 F2d 1113, 1117 (CA 1, 1983). See, also *Nader v Allegheny Airlines, Inc*, 167 US App DC 350, 365, n 37; 512 F2d 527 (1975), rev'd on other grounds 426 US

---

under the doctrine of primary jurisdiction. Presumably, this was a part of Detroit Edison's impetus for raising the doctrine at that time. Further, as noted above, the trial court had not yet even considered Travelers' breach of contract claim, as the tort claims were addressed first. For most of this seventeen-month period, before the issue of primary jurisdiction was raised, the claims of the plaintiff were in contract and tort. Only the contract claims could be heard by the MPSC. Thus, to have raised the doctrine of primary jurisdiction while both claims survived would have subjected Detroit Edison *and* Travelers to bifurcated proceedings—tort claims in circuit court and the breach of contract claim in the MPSC. Thus, it seems perfectly reasonable for Detroit Edison to have waited until the tort claims were dismissed before asking that what remained—a contract claim alone—be referred to the MPSC.

290, 96 S Ct 1978, 48 L Ed 2d 643 (1976); *Louisiana & Arkansas R Co v Export Drum Co*, 359 F2d 311, 314 (CA 5, 1966); *Locust Cartage Co v Transamerican Freight Lines Inc*, 430 F2d 334 (CA 1, 1970). Indeed, it has been noted that

> [t]he primary jurisdiction doctrine is another form of judicial restraint. It is more complicated than the political question doctrine because it involves congressional delegation of discretion to an agency. It will arise when Congress has passed a statute regulating an area under the supervision of an expert administrative agency whose supervision involves factual determinations aided by the special expertise of the agency. Once the agency has acted, the court must determine the extent to which it will defer to that special expertise or review the agency's action." [*Good Fund Ltd v Church*, 540 F Supp 519, 546 (D Colo, 1982), rev'd sub nom *McKay v United States*, 703 F2d 464 (CA 10, 1983).]

The circuit court noted that judicial resolution of the issue could adversely affect the regulatory responsibilities of the MPSC. See, *Diamond Mortgage*, *supra* at 613. The circuit court's reasoning was consistent with the rationale set forth by this Court in *Rinaldo's*, *supra* at 71-72. It thoroughly considered the issue in light of the requisite agency expertise, the necessity for uniform resolution of the issue underlying the dispute, and the effect of a judicial, rather than an administrative, resolution.

In our judgment, the circuit court, in assessing the factors applicable to questions of primary jurisdiction, did not err as a matter of law, and properly applied the doctrine

to the instant case.

## CONCLUSION

For the foregoing reasons, we conclude that the doctrine of primary jurisdiction is not a defense, but rather a doctrine of judicial deference and discretion, a prudential doctrine, designed to accord respect to the separation of powers in our constitutional system. Because we conclude that the doctrine of primary jurisdiction is not a defense, it was unnecessary for Detroit Edison to have raised the issue in its first responsive pleading. The circuit court did not err in concluding that the proper forum for Travelers' breach of contract claim was before the MPSC. We, therefore, reinstate the decision of the circuit court.

Reversed.

CORRIGAN, C.J., and CAVANAGH, KELLY, TAYLOR, and YOUNG, JJ., concurred with MARKMAN, J.

31

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

THE TRAVELERS INSURANCE COMPANY,

    Plaintiff-Appellee,

v                                              No. 116610

THE DETROIT EDISON COMPANY,

    Defendant-Appellant,

and

CITY OF DETROIT WATER AND SEWERAGE DEPARTMENT,

    Nonparticipating Defendants.

_____

WEAVER, J. (*concurring*).

    I concur with the result of the majority opinion and the analysis of part VI.