KELLY, J.
(dissenting). I agree with the majority that our state courts have jurisdiction over plaintiffs claim under the federal Head Start Act, 42 USC 9831 et seq. However, I disagree with its conclusion that the act, at 42 USC 9839(a), does not provide a private cause of *511 action. The statutory language, the focus of the legislation, its history, and its purpose imply a congressional intent to allow private actions. Therefore, I would find such a right and affirm the decision of the Court of Appeals.
DEFENDANT’S VARIOUS JURISDICTIONAL CHALLENGES
Defendant raises a variety of jurisdictional arguments on appeal. It claims that primary jurisdiction must rest with the Department of Health and Human Services (HHS) because, otherwise, an “imbalance” would be created in the administration of the Head Start Act. This Court explained the doctrine of primary jurisdiction in Travelers Ins Co v Detroit Edison Co, 465 Mich 185; 631 NW2d 733 (2001). It is based on the principle of separation of powers and is concerned with the respect appropriately shown to an agency’s decisions made in the performance of regulatory duties. Id. at 196-197.
The primary jurisdiction doctrine underscores the notion that administrative agencies possess specialized and expert knowledge to address the matters they regulate. Id. at 198. The question of primary jurisdiction arises only with respect to matters that Congress has assigned to a governmental agency or administrative body. Attorney General v Diamond Mortgage Co, 414 Mich 603, 613; 327 NW2d 805 (1982). This case does not concern such matters.
Moreover, resolution of this case does not require specialized knowledge. Instead, it involves a straightforward question of statutory interpretation. This Court is well equipped to handle such questions because they do not require specialized or expert knowledge outside the scope of our general jurisdiction. Therefore, *512 the primary jurisdiction doctrine simply does not apply to this case. Id.) Travelers, supra at 198-199.
Defendant complains that, under the Chevron[1] doctrine, the meaning that HHS has given to “reasonable public access” in various letters interpreting 42 USC 9839(a) should be definitive. Chevron directs that considerable weight be accorded an agency’s construction of a statutory scheme. Chevron, supra at 844. But this applies only when the decision involves reconciling conflicting policies and requires more than ordinary knowledge of matters that the agency regulates. Id.
This case does not demand a detailed knowledge of the subject matter of the Head Start Act. Nor does it concern a complicated matter of interagency interaction or policy. It does not require detailed knowledge of the workings of the Head Start Act. Rather, it involves an issue of statutory construction. No special expertise being required, the Chevron doctrine does not apply. Id.
Defendant also argues that we lack jurisdiction because plaintiff failed to exhaust all its administrative remedies. But the United States Supreme Court has ruled that “where Congress has not clearly required exhaustion, sound judicial discretion governs.” McCarthy v Madigan, 503 US 140, 144; 112 S Ct 1081; 117 L Ed 2d 291 (1992). 42 USC 9839(a) contains no exhaustion requirements and is silent regarding administrative remedies. Therefore, it is within our sound discretion to hear this case.
Given that none of the theories that defendant relies on to challenge this Court’s jurisdiction applies here, it is appropriate for us to reach the merits of the case. And *513 it is appropriate for us to decide whether Congress intended a private right of action in 42 USC 9839(a).
WHETHER A PRIVATE CAUSE OF ACTION EXISTS REQUIRES A DETERMINATION OF LEGISLATIVE INTENT
Congress can create a private right of action in two ways. It can expressly provide for the right or it can imply it. Cannon v Univ of Chicago, 441 US 677, 717; 99 S Ct 1946; 60 L Ed 2d 560 (1979). Frequently, legislation does not clearly express whether a private right was intended. The growing volume of litigation and the complexity of federal legislation increase the need for careful scrutiny to ensure what Congress wanted. Merrill Lynch, Pierce, Fenner & Smith, Inc v Curran, 456 US 353, 377; 102 S Ct 1825; 72 L Ed 2d 182 (1982).
To assist us in undertaking that scrutiny, the United States Supreme Court articulated a four-part test thirty years ago in Cort v Ash, 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975). A court makes four inquiries: (1) whether the plaintiff is a member of the class for whose benefit the legislative body enacted the statute, (2) whether there is any indication that the legislative body intended to create or deny such a right of action, (3) whether inferring the right of action is consistent with the underlying scheme of the legislation, and (4) whether the cause of action is one traditionally relegated to state law so that it would be inappropriate to base the determination solely on federal law. Id. at 78. The key to this inquiry is determining the legislative intent in enacting the statute. Merrill Lynch, supra at 377-378.
In Touche Ross & Co v Redington,[2] the Court opined that the first three factors of Cort should be given greater weight than the fourth. The opinion states:
*514 Indeed, the first three factors discussed in Cort — the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78 — are ones traditionally relied upon in determining legislative intent. [Id. at 575-576.]
The language of the statute in question in Touche Ross[3] did not explicitly create a private remedy. Also, the legislative history gave no indication that Congress intended one. The statute neither conferred rights on private parties nor proscribed conduct as unlawful. Touche Ross, supra at 569. It required that brokers keep certain documents for government inspection and focused on governmental rights of inspection. Id. at 569-570. Because the statute did not imply a private right of action, the Court found that none existed. Id. at 571.
The majority contends that, twenty-two years after Touche Ross, the United States Supreme Court abandoned the Cort analysis and switched to a completely textual analysis in Alexander v Sandoval, 532 US 275; 121 S Ct 1511; 149 L Ed 2d 517 (2001). I disagree. In Alexander, the Court followed the same reasoning as in Touche Ross and focused on the initial Cort factors.
As in Touche Ross, the Alexander Court stated that, to determine legislative intent, it was important to start with the language of the statute. Id. at 287-288. In that case, it needed to go no further in its inquiry. Id. at 288. The reason was that, as in Touche Ross, the statute under consideration[3]
[4] indicated that Congress intended not to create a private cause of action. Alexander, supra at 288-289.
That statute neither conferred rights on private parties nor proscribed conduct as unlawful. Instead, it *515 empowered governmental agencies to enforce regulations. Id. at 289. The Court concluded that, by expressly providing one method of enforcement, Congress signaled that it intended to preclude other methods.[5] Id. at 290.
Contrary to the majority’s conclusion, a full reading of Alexander indicates that the Court did not abandon Cort. Instead, Alexander stated that the analysis in that case need not extend beyond the first two Cort factors because the statute indicated that Congress did not intend a private cause of action. The Cort factors remain a valid and important means of discerning legislative intent. The Alexander decision provides no basis to conclude the contrary.
SPECIFIC ANALYSIS OF 42 USC 9839
Despite espousing a textualist approach, the majority never deals with the actual language of 42 USC 9839(a). Instead, it focuses on tangentially related federal district court cases and the overall purpose of the Head Start Act.
Let us review the actual language in question. 42 USC 9839(a) provides in part:
Each Head Start agency shall observe standards of organization, management, and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the purposes of this subchapter [42 USC 9831 et seq.] and the *516 objective of providing assistance effectively, efficiently, and free of any taint of partisan political bias or personal or family favoritism. Each such agency shall establish or adopt rules to carry out this section, which shall include rules to assure full staff accountability in matters governed by law, regulations, or agency policy. Each agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible. Each such agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to... (3) guard against personal or financial conflicts of interest .... [Emphasis added.]
This language indicates the intent of Congress to maintain open accountability in the use of Head Start funds. It explicitly provides a right of public access. After stating that “[e]ach agency shall also provide for reasonable public access to information,” it spells out particulars on how to meet this requirement, including holding public meetings.
The statute specifically confers an individual right on members of the public to conduct inspections of books and records. The opposite situation existed in both Touche Ross and Alexander, where the statutes lacked language creating such a right. They offered neither the general public nor any private individual access to anything. The oversight they called for was by governmental agencies. Alexander, supra at 288-289; Touche Ross, supra at 569-570. The majority simply misses this important distinction.[6]
*517 It relies on two federal district court cases, Johnson v Quin Rivers Agency for Community Action, Inc, 128 F Supp 2d 332 (ED Va, 2001), and Hodder v Schoharie Co Child Dev Council, Inc, 1995 US Dist LEXIS 19049 (ND NY, 1995). But Johnson and Hodder do not support the conclusion that no private cause of action exists and they are inapplicable to the case at hand.
Neither dealt with 42 USC 9839(a). Johnson concerned claims of discrimination and substandard enforcement of Head Start regulations. Johnson, supra at 335. The Head Start provisions in question were 42 USC 9836a(a)(l) and (2). Johnson, supra at 336-337.
Hodder concerned claims of employees terminated from Head Start agencies. Hodder, supra at *16. It dealt with 42 USC 9849(b). Hodder, supra at *12. 42 USC 9839(a) was mentioned only in passing.
The only thing Hodder and Johnson have in common with this case is that both involve provisions of the Head Start Act. But the statutory language scrutinized in Hodder and Johnson makes no mention of public access as 42 USC 9839(a) does. Given that Hodder and Johnson do not deal with 42 USC 9839(a), they are of no assistance in our resolution of this case.
The majority also bases its decision on the general purpose of the Head Start Act. It assumes that the only purpose worth considering is the act’s overarching goal of providing services to low-income children and their families. It ignores the congressional intent specifically written into 42 USC 9839(a).
*518 42 USC 9839(a) specifies Congress’s goal of maintaining open accountability in the use of public funds and effectuates it by providing a right of public access to books and records. By ignoring these specific provisions, the majority has effectively substituted its judgment for that of Congress. In reducing public oversight, it frustrates the paramount goals of the Head Start Act by facilitating the misuse of federal funds.
APPLICATION OF THE CORT FACTORS TO 42 USC 9839(a)
Given that the language of the statute does not contradict the existence of a private cause of action, it is appropriate to apply all the Cort factors. The first question is whether plaintiff is in the class for whose benefit Congress enacted 42 USC 9839(a). The statute indicates that Congress intended to grant access to the public at large. Plaintiff is a member of the public. Therefore, plaintiff is within the appropriate class. Cort, supra at 79.
The second question, whether there is any indication that Congress intended to create or to deny a private right of action, has already been discussed. The language of 42 USC 9839(a) indicates a specific intent to create such an action. There is no legislative history or other material, contradicting this intent.
The third question is whether it is consistent with the underlying legislative scheme to infer a private right of action. Cort, supra at 78. As the majority states, the overall purpose of the Head Start Act is to promote school readiness. 42 USC 9831. As part of its plan to reach this goal, Congress expressed an intent to maintain open accountability in the use of public funds in 42 USC 9839(a). In the same section, to effectuate this intent, Congress provided the public with a right of access to books and records. Inferring a right of action *519 to implement this right enforces that intent. Therefore, inferring a right of action is consistent with the legislative scheme.
Finally, there is no indication that this is a cause of action traditionally relegated to state law. And defendant makes no such argument. To the contrary, an action pursuant to 42 USC 9839(a) is the only means by which plaintiff could obtain the information it seeks. Therefore, the analysis of this factor, as with the other Cort factors, points to the need to recognize a private right of action under 42 USC 9839(a).
WHERE A LEGAL RIGHT EXISTS, SO DOES A LEGAL REMEDY
“The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws. . . .” Marbury v Madison, 5 US (1 Cranch) 137, 163; 2 L Ed 60 (1803). One of the fundamental tenets of the American legal system is that, where there is a legal right, there is also a legal remedy. Id. After it is determined that Congress intended a right of action, courts presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise. Franklin v Gwinnett Co Pub Schools, 503 US 60, 66; 112 S Ct 1028; 117 L Ed 2d 208 (1992).
In this case, a private right of action exists under 42 USC 9839(a). Plaintiff sought the appropriate remedy of viewing the records of the bids submitted for office supplies and furniture. Defendant makes no persuasive argument that viewing this information would be unreasonable. This proposed remedy is specifically consistent with the language of 42 USC 9839(a), which allows for reasonable inspections of books and records. Therefore, Congress has not expressly indicated that this remedy is inappropriate. And the trial court did not err in granting it.
*520 I would affirm the decision of the Court of Appeals.
CAVANAGH, J., concurred with KELLY, J.

 Chevron USA Inc v Natural Resources Defense Council, Inc, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

 442 US 560; 99 S Ct 2479; 61 L Ed 2d 82 (1979).

 15 USC 78q(a).

 42 USC 2000d-1.

 The majority points out that 42 USC 9839(a) contains language like the statutory language that the Supreme Court analyzed in Alexander. Ante at 500 n 46. But the majority again misses the point. Unlike 42 USC 2000d-l, it contains a directive that does not concern the mere internal creation of rules. 42 USC 9839(a) contains language that is absent in 42 USC 2000d-l (the statutory language analyzed in Alexander). 42 USC 9839(a) specifically mentions the “public” and “appropriate community groups ....” It allows the public and these groups to request public hearings and to seek access to books and records. 42 USC 9839(a).

 The majority states that it “wholly disagree[s]” with the conclusion that 42 USC 9839(a) confers an individual right on a member of the public. It contends that 42 USC 9839(a) merely creates a disclosure requirement. Ante at 505 n 49. Again, the majority fails to analyze the *517 actual language of the statute. 42 USC 9839(a) mandates public access, such as public hearings, at the request of “appropriate community groups Only by allowing enforcement of this public inspection and access requirement can we effectuate Congress’s specific goal of maintaining open accountability in the use of public funds. The majority simply ignores this clear congressional intent.